**In re The KNIGHT PUBLISHING COMPANY d/b/a The Charlotte Observer, Petitioner.**

No. 83–1933.

United States Court of Appeals, Fourth Circuit.

Argued May 8, 1984.

Decided Sept. 21, 1984.

Robert H. Pryor, Charlotte, N.C. (Robert B. Cordle, Jonathan E. Buchan, Helms, Mulliss & Johnston, Charlotte, N.C., on brief), for petitioner.

John Stuart Bruce, Asst. U.S. Atty., Raleigh, N.C. (Samuel T. Currin, U.S. Atty., Raleigh, N.C., on brief) and Maria M. Lynch, Raleigh, N.C. (David W. Long, Poyner, Geraghty, Hartsfield & Townsend, Raleigh, N.C., on brief), for respondent.

Before PHILLIPS and CHAPMAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

BUTZNER, Senior Circuit Judge:

The Knight Publishing Company, contesting the actions of the district court in *United States v. Soles*, petitions for a writ of mandamus and prohibition. The petition raises three issues: whether the court erred in (1) closing the courtroom to the public, (2) ordering certain court records sealed, and (3) subsequently excising portions of the records before releasing them. We conclude that the court erred in closing the courtroom and in sealing the records, but it did not err in excising portions of the records.

I

North Carolina State Senator R.C. Soles was acquitted in a trial that attracted considerable attention from the press. On the first day of trial, Soles filed three motions with supporting affidavits: (1) a motion to dismiss the indictment on grounds of prosecutorial misconduct; (2) a motion for investigation of the prosecutor; and (3) a motion for disclosure of the government's evidence pertaining to other crimes, wrongful acts, and character. All counsel requested that the motions be placed under seal and that any evidentiary hearing to resolve the allegations of misconduct be closed to the public.

The judge, after briefly reviewing the documents, agreed to place the motions under seal and to consider the motion for closure. He told the marshal to be prepar-

ed to close the courtroom the following day. The jury was then selected.

The next morning, the marshal informed those present in the courtroom that the court was closed at the direction of the judge. Knight's reporter asked the marshal if she could speak with the judge before the courtroom was closed in order to object to the closure. The marshal denied the request after conferring with the judge. Court reconvened in the afternoon, open to the public, and the judge told the jury that he and counsel had resolved a number of evidentiary matters in chambers. He also stated that the case would be continued for three days. A consent order entered the same day disclosed that counsel had agreed to the continuance, withdrawal of Soles's motions, and retention of the motions and related papers under seal pending judgment.

Knight filed an objection to closure of the courtroom and requested access to transcripts of any hearing conducted in chambers and to any documents which were filed with the court. After considering the motion, the judge entered an order in which he explained that at the conference in chambers he told counsel that Soles's motions would require a full evidentiary hearing open to the public. The order recited that while the courtroom was closed, "no hearing was conducted. No documentary evidence was offered or accepted. No testimony was presented. No legal arguments were heard by the court." Instead, counsel had conferred among themselves and drafted the consent order withdrawing the motions, maintaining the seal, and continuing the case.

The court directed Knight's counsel to appear at a hearing, which was scheduled 10 days after closure, to state the basis for its objection to closure and sealing of the documents. At the hearing, the court informed Knight that the motions pertained to collateral matters, that they contained material that was highly prejudicial to Soles and the government, and that postponing the trial in order to hear any objections to sealing would have been adverse to

the interests of Soles and the government. The court declined to release the documents at that time.

After Soles was acquitted, he and the government filed a joint motion in open court to excise portions of the sealed documents. At the hearing on the motion, Knight was afforded an opportunity to state its objections. The court ordered removal of the seal and released to the public the motions alleging prosecutorial misconduct and supporting documents except the following: the name of the government's informant, a complaint and arrest warrant that identified him, hearsay statements likely to prejudice defendants in pending criminal cases, and impertinent and scandalous material irrelevant to the issues in Soles's trial, which would leave the persons mentioned without effective means of redress.

## II

■ Although Soles's trial has ended and the records sought by Knight have been released in excised form, our jurisdiction over the controversy arising out of the closure and sealing orders is not defeated. The petition for mandamus raises issues "capable of repetition, yet evading review." *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). Criminal trials are generally of such short duration that closure and sealing orders will evade review. Also, it is likely that a Knight newspaper will be subject to other closure and sealing orders in the future. *See Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 602–03, 102 S.Ct. 2613, 2618, 73 L.Ed.2d 248 (1982). We therefore turn to the merits of this petition.

## III

### Closing the Courtroom

■ The public and press have a right, guaranteed by the first amendment, to attend criminal trials. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580, 100 S.Ct. 2814, 2829, 65 L.Ed.2d 973 (1980).

The right to access to criminal proceedings is not absolute but must be balanced against other compelling interests protected by the Constitution, such as the right of the accused to a fair trial. *See Press-Enterprise Co. v. Superior Court*, —— U.S. ——, 104 S.Ct. 819, 824, 78 L.Ed.2d 629 (1984); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606, 102 S.Ct. 2613, 2620, 73 L.Ed.2d 248 (1982). Nonetheless, there is a strong presumption in favor of openness:

> Closed proceedings ... must be rare and only for cause shown that outweighs the value of openness .... The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.

*Press-Enterprise Co.*, 104 S.Ct. at 824. *Accord Waller v. Georgia*, —— U.S. ——, ——, 104 S.Ct. 2210, 2212; 81 L.Ed.2d 31 (1984). Even with findings adequate to support closure, the trial court must consider alternatives before the courtroom can be closed constitutionally. *Press-Enterprise Co.*, 104 S.Ct. at 825.

The district judge closed the courtroom to the public after Soles's trial had begun, yet made no findings to support closure and failed to consider alternatives that would satisfy potentially conflicting interests. It is ironic that while the courtroom was closed, the district judge was informing counsel in a chambers conference that an evidentiary hearing on the motions must be open to the public. Whether or not the closure resulted from the court's failure to communicate this decision to the marshal, the closure was error. We reject the suggestion that because nothing took place in the courtroom, no closure occurred. If no argument was heard, no evidence was taken, and nothing took place, there was no reason to close the courtroom.

To facilitate a trial court's case-by-case determination of closure, "representatives of the press and general public 'must be given an opportunity to be heard on the question of their exclusion.'" *Globe Newspaper*, 457 U.S. at 609 n. 25, 102 S.Ct. at 2622 n. 25. *See also Gannett Co. v. DePasquale*, 443 U.S. 368, 401, 99 S.Ct. 2898, 2916, 61 L.Ed.2d 608 (1979) (Powell, J., concurring). When a closure motion is made in open court, persons present must be given notice and an opportunity to object before the public can be excluded. *See In re Globe Newspaper Co.*, 729 F.2d 47, 56 (1st Cir.1984); *In re Iowa Freedom of Information Council*, 724 F.2d 658, 661 (8th Cir.1984); *Newman v. Graddick*, 696 F.2d 796, 802 (11th Cir. 1983).

The Third and Ninth Circuits have considered the necessity and form of notice when the request for closure is not made in open court. In *United States v. Criden*, 675 F.2d 550, 557–60 (3d Cir.1982), the court held that due process requires that the public be given some notice that closure may be ordered in a criminal proceeding. Rejecting individual notice as impractical and unwarranted, the court required that closure motions be docketed reasonably in advance of their disposition to give the public and press an opportunity to intervene and present their objections to the court. The Ninth Circuit, noting that a closure motion may not be filed of record or may be suggested to the trial judge outside of open court, extended *Criden's* procedure. It held that when the district court has been made aware of the desire of specific members of the public to be present, reasonable steps to afford them an opportunity to submit their views should be taken before closure. *United States v. Brooklier*, 685 F.2d 1162, 1168 (9th Cir. 1982).

If the district court believes it necessary to close the courtroom after hearing the objections, it must state its reasons on the record, supported by specific findings. *Press-Enterprise Co.*, 104 S.Ct. at 824. The Third Circuit has held that the court

must also state its reasons on the record for rejecting alternatives to closure. *Criden,* 675 F.2d at 560. The court's findings must be specific enough to enable a reviewing court to determine whether the closure order was proper. *Press-Enterprise Co.,* 104 S.Ct. at 824.

Finding these requirements to be warranted, we adopt them as prerequisites to a closure order in a criminal proceeding.

## IV

### Sealing Court Documents

In *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597, 98 S.Ct. 1306, 1311, 55 L.Ed.2d 570 (1978), the Supreme Court recognized a common law right to inspect and copy judicial records and documents. This right of access to court records is not absolute, however. The trial court has supervisory power over its own records and may, in its discretion, seal documents if the public's right of access is outweighed by competing interests. The Supreme Court has suggested that the factors to be weighed in the balancing test include whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records. 435 U.S. at 597–608, 98 S.Ct. at 1311–1317.

■ Because the conference between the district court and counsel was conducted while the courtroom was closed, and no transcript was made of the proceedings, the documents sought were the only source of information as to what happened during closure. We note this fact only to emphasize the importance of Knight's request for access to the sealed motions. The district court's error was in giving too little weight to the presumption favoring access and

making its decision to seal the documents without benefit of Knight's arguments for access. The public was entitled to notice of counsel's request to seal, and an opportunity to object to the request before the court made its decision.[1] *See In re Knoxville News-Sentinel Co., Inc.,* 723 F.2d 470, 474–76 (6th Cir.1983). As with closure motions, we believe individual notice is unwarranted. Notifying the persons present in the courtroom of the request to seal or docketing it reasonably in advance of deciding the issue is appropriate.

■ The trial would not have been delayed by a prompt hearing in this case because the consent order entered by the court provided for a three-day interruption in the trial. Moreover, the district court failed to consider alternatives to sealing the documents. The jury had been selected at the time the sealing order was entered, therefore excising the documents and releasing them to the public, coupled with an admonition to the jury not to listen to news media or discuss the case with others, was an alternative to sealing that should have been considered. *See Waller v. Georgia,* — U.S. —, — n. 6, 104 S.Ct. 2210, 2216 n. 6, 81 L.Ed.2d 31 (1984).[2]

■ A district court should state the reasons for its decision to seal supported by specific findings, and the reasons for rejecting alternatives to sealing in order to provide an adequate record for review. *Cf. Press-Enterprise Co.,* 104 S.Ct. at 824.

## V

■ Knight seeks reversal of the district court's order excising portions of the documents, but it does not press for the identity of the confidential informant. Soles urges affirmance of the order, and the government stands indifferent about the excision of impertinent and scandalous material.

---

1. The court may temporarily seal the documents while the motion to seal is under consideration so that the issue is not mooted by the immediate availability of the documents.

2. In fact, the court did admonish the jury not to listen to or read news reports concerning the case, after the sealing order was entered.

We have reviewed the documents, and in our judgment the district court properly excised the material in question for the reasons stated in its order. There is no question about the propriety of excising the name of the informant, the complaint and arrest warrant that identified him, and material that would prejudice defendants in pending criminal cases. As for the remainder, we note that the court has the power to insure that its records are not used to "promote public scandal," *see Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 598, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978), and we agree with the district court's finding that the excised material is "impertinent and scandalous to one or more persons" mentioned in the documents. Knight's argument that the excised material is closely intertwined with allegations of prosecutorial misconduct is insufficient to tip the balance in favor of access. The excised material does not refer to the prosecutor. The district court narrowly tailored the excision order in order to preserve the substance of the motions and supporting documents alleging prosecutorial misconduct while accommodating the conflicting interests advanced by Soles.

## VI

In sum, the district court's excision of the documents was substantially and procedurally correct. Its substantive standards for excision were consistent with those mentioned in *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597–608, 98 S.Ct. 1306, 1311–1317, 55 L.Ed.2d 570 (1978). Its procedures provided notice and an opportunity for interested parties to be heard, and it fully explained its reasons for excision.

Although we cannot approve closure of the courtroom and sealing the documents, we find it unnecessary to issue a writ. The district court acted without the benefit of several pertinent opinions that were decided after these proceedings were concluded. We are confident that in the future the district court and other courts of the circuit will follow the procedures we have outlined to implement the substantive principles the Supreme Court has explained in the cases we have cited.

Writ denied. Knight, Soles, and the government shall each bear their own costs.