**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Michael J. HICKEY, Defendant,**

**Mark A. Hopkinson, Appellant.**

No. 84–1847.

United States Court of Appeals,
Tenth Circuit.

July 11, 1985.

McKay, Circuit Judge, filed opinion concurring in part and dissenting in part.

Leonard D. Munker, State Public Defender, Cheyenne, Wyo., for appellant.

David A. Kern, Asst. U.S. Atty., Cheyenne, Wyo. (Richard A. Stacy, U.S. Atty., Cheyenne, Wyo., with him on the brief), for plaintiff-appellee.

Before McKAY and SETH, Circuit Judges, and WEINSHIENK, District Judge*.

SETH, Circuit Judge.

The question presented for decision is whether the common law right of access to court records extends to the sealed plea bargain of a criminal defendant now enrolled in the witness protection program of the United States Marshal's Service.

Mark A. Hopkinson brings this appeal from an order of the United States District

* Honorable Zita L. Weinshienk, United States District Judge for the District of Colorado, sitting by designation.

Court for the District of Wyoming denying him access to the court file of one Michael J. Hickey. The file contains the details of Mr. Hickey's plea bargain on federal charges stemming from a bombing incident. The court sealed the file at the request of the United States Attorney in order to safeguard its contents from disclosure. The appellant asserted that inspection was necessary to determine whether the file contained any exculpatory information, citing *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. However, the appellant made no allegation of prosecutorial misconduct or the purposeful suppression of material evidence. The motion, seeking review of "all pertinent information" touching on Mark Hopkinson's conviction, was couched in general terms. The government resisted the motion on the grounds that the file might reveal Mr. Hickey's present location. Any such revelation could be potentially dangerous to Mr. Hickey in light of the fact that the appellant is presently under a sentence of death for orchestrating the murder of a witness against him. The appellant masterminded that crime while imprisoned in a federal facility in California. The trial court concluded that the government had a "serious and fundamental interest in maintaining the records under seal." The court reviewed the file and determined it contained only administrative matters. The court found nothing "relevant" to the appellant's case.

The facts underlying the appellant's convictions in state court are particularly heinous. The history of the case is recited exhaustively in the various decisions of the Wyoming Supreme Court dealing with the direct and collateral appeals. *See generally Hopkinson v. State,* 632 P.2d 79 (Wyo.) (*Hopkinson I*); *Hopkinson v. State,* 664 P.2d 43 (Wyo.) (*Hopkinson II*); *Hopkinson v. State,* 679 P.2d 1008 (Wyo.) (*Hopkinson III*). However, a brief review of the genesis of the Hopkinson case is important by designation.

tant in assessing the propriety of the exercise of the trial court's discretion.

Beginning in 1975, the appellant developed an intense animosity towards Vincent Vehar, an attorney representing parties embroiled in civil litigation against the appellant's family. The appellant plotted with two friends, Michael Hickey and Jeff Green, to kill Vincent Vehar. During this planning phase, the appellant dispatched Jeff Green to Arizona to bomb the car of one of the appellant's debtors. The mission was abortive; Mr. Green was stopped in Utah for speeding and the bomb was discovered. The appellant and Michael Hickey bailed Mr. Green out of jail. At this point Jeff Green was dropped from the discussions concerning the Vehar killing.

The appellant knew that Michael Hickey had killed a 15-year-old girl named Kelly Wyckhuyse. He offered Mr. Hickey $2,000 and his assistance in covering up the Wyckhuyse murder if he would kill Vincent Vehar. On August 6, 1977, the appellant "ordered Hickey to blow up the Vehar home that night; Hickey did. Vehar, his wife and one son were killed by the explosion—another son was seriously injured." *Hopkinson II*, 664 P.2d at 49. Michael Hickey then left for California.

An accomplice in the Wyckhuyse murder implicated Michael Hickey for that crime. He was charged with murder. Michael Hickey, the appellant, and Jeff Green conspired together to protect Mr. Hickey; they concocted stories which implicated the accomplice rather than Michael Hickey. The charges against him were dropped, and the accomplice was charged. During the accomplice's trial, Jeff Green broke down. He implicated the appellant and Michael Hickey in the Vehar bombing and stated that Michael Hickey killed the Wyckhuyse girl.

The appellant and Michael Hickey were tried in the United States District Court in Wyoming in March 1979 on federal charges stemming from the attempted Arizona bombing. Jeff Green testified as an unindicted coconspirator against the appellant. Michael Hickey was acquitted. The appellant was convicted and sentenced to prison at the Lompoc, California facility. This court affirmed the conviction. *See United States v. Hopkinson*, 631 F.2d 665 (10th Cir.).

While at Lompoc, the appellant directed unknown parties to kill Jeff Green. His mutilated body was discovered shortly before the opening of the grand jury investigation into the Vehar deaths. *Hopkinson II*, 664 P.2d at 50.

Michael Hickey entered into two distinct plea bargain arrangements. In exchange for pleading guilty to second degree murder in the Wyckhuyse case and testifying on the appellant's role in the Vehar bombing, Michael Hickey received complete immunity from prosecution in the Vehar deaths in the state court proceedings. Michael Hickey received a 20-year sentence for the Wyckhuyse murder. This sentence ran concurrently with a 20-year sentence later imposed in federal court for setting the explosion that maimed the surviving Vehar son. The federal sentence resulted from a separate plea bargain arrangement. There is no doubt that the contents of the state court plea bargain were known. The agreement was read into the record at the penalty hearing after the remand in *Hopkinson I*. *See Hopkinson II*, 664 P.2d at 62, 63. There is also no doubt that at least the general terms of the federal plea bargain were known. *See Hopkinson I*, 632 P.2d at 105 n. 13.

The appellant was convicted of the murder of Jeff Green and received the death sentence. The appellant also was convicted of the Vehar murders and received three sentences of imprisonment for life. Because the appellant repeatedly asserts that Michael Hickey was the "key" witness against him, it should be pointed out that Mr. Hickey's testimony only concerned the Vehar killings. The case against the appellant for the murder of Jeff Green was based on circumstantial evidence arising out of the appellant's actions while incarcerated at Lompoc. Michael Hickey was an important witness in the Vehar prosecution. However, he was not at all a "key"

witness in the aspect of the case for which the appellant was sentenced to death, namely, the Green assassination. Hence any alleged improprieties in the federal plea bargain would only have significance for the Vehar convictions.

The appellant essentially makes three arguments. First, he contends that the common law right of access to court records requires the production of Michael Hickey's file. Secondly, the appellant asserts the trial court erred in not allowing a hearing on his motion. Finally, the appellant argues that his *Brady* request, in the context of his pending death sentence, compels full access to the sealed file. We reject all three arguments and therefore affirm the decision of the trial court.

■ We begin by acknowledging the axiom that a common law right exists to inspect and copy judicial records. *See, e.g., In re Knight Publishing Company,* 743 F.2d 231, 235 (4th Cir.); *In re National Broadcasting Company, Inc.,* 653 F.2d 609, 612 (D.C.Cir.). The right is an important aspect of the overriding concern with preserving the integrity of the law enforcement and judicial processes. *United States v. Hubbard,* 650 F.2d 293, 315 (D.C. Cir.). However, the right is not absolute. All courts have supervisory powers over their own records and files. *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 598, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570; *Crystal Grower's Corporation v. Dobbins,* 616 F.2d 458, 461 (10th Cir.). Thus a court, in its discretion, may seal documents "if the public's right of access is outweighed by competing interests." *In re Knight Publishing Company,* 743 F.2d at 235. The Supreme Court discussed a number of the traditional exceptions to the general rule of access in the *Nixon* case. There the Court stated:

"[A]ccess has been denied where court files might have become a vehicle for improper purposes. For example, the common-law right of inspection has bowed before the power of a court to insure that its records are not 'used to gratify private spite or promote public scandal' through the publication of 'the painful and sometimes disgusting details of a divorce case.' Similarly, courts have refused to permit their files to serve as reservoirs of libelous statements for press consumption, or as sources of business information that might harm a litigant's competitive standing."

*Nixon v. Warner Communications, Inc.,* 435 U.S. at 598, 98 S.Ct. at 1312 (citations omitted). The Court pointed out that because the analysis of the question of limiting access is necessarily fact-bound, there can be no comprehensive formula for decisionmaking. *Id.* at 599, 98 S.Ct. at 1312. "[T]he decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Id.* Thus the trial court in the present case had the supervisory power to act as it did. The question remains whether the court abused its discretion in foreclosing access to the details of Mr. Hickey's plea bargain.

■ The trial court's discretion is not unlimited. *In re National Broadcasting Company, Inc.,* 653 F.2d at 613. The court must consider the relevant facts and circumstances of the particular case and weigh the relative interests of the parties. In our view the trial court adequately considered these factors. The court was well aware of the appellant's propensity for violence and his ability to commit criminal acts from within the confines of prison. Mr. Hickey's future safety could depend on his continued anonymity in the witness protection program. Accordingly, we agree that the government's interest in denying access to the file was compelling. This interest, absent any countervailing considerations, is sufficient to justify the exercise of the court's discretionary authority.

It is clear the court did weigh the interests of the appellant in making its decision. The court conducted an *in camera* inspection of the file to determine whether it contained any material relevant to the appellant's defense. The court concluded the file held nothing of value for the appellant.

Hence there were no countervailing interests sufficient to overcome the showing made by the government or requiring the production of the file in the interests of justice. The appellant's generalized claim that the file might contain helpful matter does not outweigh the government's justifiable concern with safety. In light of the circumstances surrounding the case, the *in camera* examination was justified. We find no indication that the trial court abused its discretion by failing to adequately evaluate the interests of the parties.

From the record as outlined in the state court decisions it appears that at least the basic form of the federal plea bargain was known to the appellant, the jury, and the public from the time of the first trial. *See Hopkinson I,* 632 P.2d at 105, 108; *Hopkinson II,* 664 P.2d at 50. The jury knew a federal plea bargain existed, and that testimony was given in exchange for a 20-year sentence on a lesser charge in the Vehar matter. If the common law right of access were absolute, as the appellant contends, the efficacy of the witness protection program would be substantially at risk.

The appellant alludes to an argument that there is a constitutional right of access to court files and documents stemming from the First and Sixth Amendments. In support of this proposition the appellant resorts to *Press-Enterprise Company v. Superior Court of California,* 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629, and *Waller v. Georgia,* —— U.S. ——, 104 S.Ct. 2210, 81 L.Ed.2d 31. These cases do not purport to decide the constitutional dimensions, if any, of the question before us. On the contrary, the cases deal with the general issue of closed pretrial and trial proceedings. *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 98 S.Ct. 1306, remains the only decision by the Supreme Court directly dealing with the more narrow issue of access to court files. There the Court rejected the broadcasters' claim that release of the Watergate tapes was mandated by the First Amendment guarantees of free speech and press or the Sixth Amendment guarantee of a public trial. *See Nixon v. Warner Communications, Inc.,* 435

U.S. at 608–10, 98 S.Ct. at 1317–18. The recent decisions of the Court dealing with a limited First Amendment right of the public and press to attend trial proceedings have neither expressly nor *sub silentio* overruled or questioned *Nixon. See, e.g., Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 581 n. 18, 100 S.Ct. 2814, 2830 n. 18, 65 L.Ed.2d 973.

▮▮ The appellant next contends he was entitled to a formal hearing on his motion to produce the sealed court file. No rule, statute, or case law is offered in support of this contention. Under the Federal Rules of Criminal Procedure the trial court has the discretion to grant or deny a hearing on this type of motion. *See, e.g.,* Fed. R.Crim.P. 47, 57(b). We conclude there was no abuse of discretion in the court's denial of a formal hearing.

▮▮ Finally, the appellant argues that production of the file is required by the decision in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. Appellant's reliance on *Brady* is misplaced. It is unclear whether the appellant properly presented a *Brady* request. Normally, the criminal defendant makes a request for *Brady* material, that is, exculpatory material, during the discovery phase prior to trial. The request is directed towards the prosecution. The litigable issue arising out of *Brady* disputes is usually premised on the defendant's assertion that the prosecutor withheld or suppressed evidence favorable to the accused that came to light after trial. Here we are confronted with a situation where the defendant makes a *Brady* request after trial and conviction. The request is directed to the United States District Court rather than the prosecutor. The request seeks information from the court file of another defendant, not the movant's own file. Further, there is no allegation in the motion of any prosecutorial misconduct. Rather, invoking *Brady,* the appellant simply sought "any material that is exculpatory in nature." It is apparent, therefore, that a *Brady* request brought in this posture is defective.

■ Even assuming that a *Brady* request was properly made, the argument must fail. We must conclude that the appellant made only a general *Brady* request. The language of the request comports with the terms of other requests that have been characterized as general. *See e.g., Chaney v. Brown,* 730 F.2d 1334, 1342 n. 11 (10th Cir.). Because the request falls within the ambit of *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342, constitutional error exists only if the suppressed evidence creates a reasonable doubt as to the appellant's guilt that did not otherwise exist.

■ There is nothing in the plea bargain to raise a reasonable doubt as to guilt or punishment that did not otherwise exist. As mentioned, the jury knew that Michael Hickey testified under both state and federal plea bargains. The exact terms of the state plea bargain were known. The general terms of the federal plea bargain were known as well. The jury knew that Michael Hickey had committed despicable crimes and had perjured himself before. Obviously his credibility was put in issue. His testimony was corroborated, however, by other witnesses. The prosecutor's case against the appellant for the murder of Jeff Green was entirely circumstantial and did not depend on Michael Hickey. Mr. Hickey was extensively cross-examined. Thus the plea bargain could not create a reasonable doubt as to the question of guilt or punishment because its basic substance was known. The contents of the closed file merely indicated Michael Hickey agreed to fully cooperate in exchange for a finite sentence on a lesser federal explosives charge and immunity for the Vehar deaths. This the jury already knew or could clearly infer from the testimony. The jury was sufficiently apprised of the deals under which Mr. Hickey testified.

Finally, this case is clearly distinguishable from our decision in *Chaney v. Brown,* 730 F.2d 1334. There we held that where a criminal defendant made a *specific Brady* request, the failure to disclose the requested information could have affected the jury's decision to impose the death penalty. Thus the death penalty could not stand. The reason why the information might have affected the jury's sentence was because the evidence related to possible mitigating factors. It was possible the defendant may not have personally killed the victims or that he was not present at the killings. *Id.* at 1351. The evidence also was relevant to aggravating circumstances that originally supported the jury's imposition of the death penalty.

In the present case, however, the details of the federal plea bargain have absolutely no bearing on mitigating or aggravating circumstances surrounding the jury's choice of the death penalty. As discussed, the details of the state plea bargain were known to the jury. The evidence was clear that the appellant was not present at either the Vehar killings or the torture-murder of Jeff Green. The situation presented in *Chaney* was fundamentally different. The federal plea bargain had no connection with aggravating or mitigating circumstances surrounding the choice of punishment. *Chaney* is inapposite. We have considered the several opinions in *United States v. Bagley,* — U.S. ——, 105 S.Ct. 3375, 87 L.Ed.2d 481, and conclude that the test there described has been followed in this case as to the materiality issue. The conclusions herein on the *Brady* issue are not based on the specificity of the request.

In sum, the trial court did not abuse its discretion in denying access to the file. Nor was production of the file compelled by *Brady.*

AFFIRMED.

The mandate shall issue forthwith.

McKAY, Circuit Judge, concurring in part, dissenting in part:

Petitioner in this case seeks access to the plea bargain entered into by one of the government's witnesses against him. He has put forth two theories. First, he argues that he has a common law right of access to the file. Second, he argues that he is entitled to see any exculpatory materi-

al in the file under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). While I agree with the majority that the file contains no *Brady* material, I believe that the common law right of access requires that petitioner be granted access to it.

The majority finds that petitioner has no common law right of access to the file because the government's interest in the safety of the witness outweighs whatever interest the petitioner may have in the contents of the file. As the court notes, the decision is best left to the discretion of the trial court. However, the trial court's discretion is not absolute. *In re National Broadcasting Co., Inc.,* 653 F.2d 609, 613 (D.C.Cir.1981). The courts have made it clear that there is a presumption in favor of a public right of access, *Nixon v. Warner Communications,* 435 U.S. 589, 602, 98 S.Ct. 1306, 1314, 55 L.Ed.2d 570 (1978), and that restricting this right of access "is rarely the proper protection." *In re National Broadcasting,* 653 F.2d at 615.

While protection of third persons such as the witness involved in this case is unquestionably a compelling reason for closing files, neither the government, the district court nor the majority of this panel has explained how disclosure of the file will jeopardize the safety of the witness. All have simply asserted that, because they view the defendant in this case to be exceptionally clever, he may, in some manner which we cannot fathom, glean the location of the witness from the contents of the file. This is exactly the argument that the defendant makes which is rejected by the majority in the *Brady* analysis, *i.e.,* that he, because of his specialized knowledge of the case, may glean from the contents of the file exculpating information that we cannot fathom.

I have reviewed the file for both purposes, as has the majority. I can find no information which I conceive as exculpating and therefore deny the defendant's request under the *Brady* analysis. By the same token, I can find nothing that would jeopardize the safety of the witness. Balanced against this is the presumption in favor of a public right of access. If defendant's speculations cannot overcome the *Brady* threshold, then I am unwilling to allow the state's speculations to overcome the presumption in favor of a public right of access, and it is disingenuous for the majority to do so. If the court's finding that there is nothing in the file that will aid the petitioner in his criminal appeals can undermine his legitimate desire to make that determination for himself, then surely the court's finding that there is nothing in the file that will jeopardize the safety of the witness undermines the state's fanciful musings about the defendant's clairvoyance. Since the state has made no reasonable argument that the witness' safety will be jeopardized by release of these materials, the presumption in favor of the public right of access is not, in my opinion, overcome. Accordingly, I must dissent.