**In the Matter of the Discipline of James A. JOHNSON, as an Attorney at Law.**

**No. 17117.**

Supreme Court of South Dakota.

Argued May 23, 1990.

Decided Oct. 24, 1990.

---

R. James Zieser, Tyndall, for Disciplinary Bd.

John Blackburn of Blackburn & Stevens Yankton, for Johnson.

WUEST, Justice.

James A. Johnson (Johnson) opposes the public disclosure of an affidavit submitted by Johnson to the disciplinary board of the State Bar pursuant to SDCL 16–19–65.[1] We grant public disclosure.

On April 26, 1990, Johnson was disbarred by this Court from practicing as an attorney and counselor at law in all of the courts of this State. Johnson submitted an affidavit to the Disciplinary Board pursuant to SDCL 16–19–65 consenting to disbarment and acknowledging the truth of the accusations asserted against him. Subsequent to his disbarment, certain news media representatives requested the release of the contents of Johnson's affidavit. In response to this request, this Court ordered Johnson and the State Bar to show cause why the contents of this affidavit should not be released. A hearing was subsequently held before this Court. However, no briefs were filed on the issue of whether Johnson's affidavit should be released by this Court. Johnson's attorney was present at the show cause hearing, as was the Chairman of the Disciplinary Board of the State Bar. Having duly considered the arguments presented at this hearing as well as the particular facts of this case, we hold Johnson's affidavit may be publicly disclosed.

The statute which grants this Court the authority to release affidavits submitted pursuant to SDCL 16–19–65 is SDCL 16–19–66. This statute provides:

> *Disbarment by consent—Public Disclosure of order.* Upon receipt of an affidavit required by [SDCL] 16–19–65, the [disciplinary] board shall file it with the Supreme Court and the Court shall enter an order disbarring the attorney on consent. The order disbarring the attorney on consent shall be a matter of public record. However, the affidavit required under the provisions of [SDCL] 16–19–65 shall not be publicly disclosed or made available for use in any other proceeding except upon order of the Supreme Court.

Although this statute provides this Court the authority to release affidavits submitted pursuant to SDCL 16–19–65, it provides no guidance as to how this Court should determine whether such affidavits

---

1. SDCL 16–19–65 provides:

An attorney who is the subject of an investigation into, or a pending proceeding involving, allegations of misconduct may consent to disbarment, but only by delivering to the board an affidavit stating that he desires to consent to disbarment and that:
(1) His consent is freely and voluntarily rendered; he is not being subjected to coercion or duress; he is fully aware of the implications of submitting his consent;
(2) He is aware that there is presently pending an investigation into or proceeding involving, allegations that there exist grounds for his discipline, the nature of which he shall specifically set forth;
(3) He acknowledges that the material facts so alleged are true; and
(4) He submits his consent because he knows that if charges were predicated upon the matters under investigation, or if the proceeding were prosecuted, he could not successfully defend himself.
(It should be noted this Court amended this rule effective July 1, 1990. *See* Supreme Court Rule 90–8.)

should be released to the public. Hence, we must look to other sources of guidance as to this issue.

■ On two occasions, this Court has been presented with the issue of whether the media should be granted access to certain court proceedings. *See Associated Press v. Bradshaw,* 410 N.W.2d 577 (S.D. 1987); *Matter of Hughes Cty. Action No. Juv. 90–3,* 452 N.W.2d 128 (S.D.1990). In these cases, we held the media's right of access was to be determined by balancing the competing interest of all parties. *Bradshaw, supra* at 579; *Hughes, supra* at 131. Other courts have applied the same principle when dealing with the issue of whether the public should be granted access to judicial records. *See United States v. Hickey,* 767 F.2d 705 (10th Cir. 1985); *Matter of Continental Illinois Securities Litigation,* 732 F.2d 1302 (7th Cir. 1984); *State ex rel. Bilder v. Township of Delavan,* 112 Wis.2d 539, 334 N.W.2d 252 (1983); *Newman v. Graddick,* 696 F.2d 796 (11th Cir.1983). The affidavit in question is a judicial record. Therefore, considering the aforementioned cases, we must balance the competing interests of all parties in order to determine whether the affidavit should be released to the public. Specifically, we must balance the interests of the State, the public and the media in order to resolve the issue now before us. In addition, we note that the "decision as to [public] access [to judicial records] is ..., a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 599, 98 S.Ct. 1306, 1312–13, 55 L.Ed.2d 570, 580 (1978). Having set forth these principles, we now address the issue of whether the affidavit should be released to the public under the circumstances of this case.

■ In beginning our analysis, we first acknowledge the axiom that a common-law right exists to inspect and copy judicial records. *Hickey, supra* at 708; *In re Knight Publishing Co.,* 743 F.2d 231, 235 (4th Cir.1984); *In re National Broadcasting Co., Inc.* 653 F.2d 609, 612 (D.C.Cir. 1981). This common-law right has been recognized by the United States Supreme Court. *See Nixon, supra* 435 U.S. at 598, 98 S.Ct. at 1312, 55 L.Ed.2d at 580. This right is an important aspect of the overriding concern with preserving the integrity of the law enforcement and judicial processes. *United States v. Hubbard,* 650 F.2d 293, 315 (D.C.Cir.1980). The common-law right to inspect judicial records is not, of course, absolute. *Nixon, supra.* Nevertheless, "the historic presumption of access to judicial records must be considered in the balance of competing interests." *Newman, supra* at 803. *See also Belo Broadcasting Corp. v. Clark,* 654 F.2d 423, 434 (5th Cir.1981).

In addition to the historical presumption of access to judicial records, the media's rights under the First Amendment must also be considered as an interest to be weighed in the balancing analysis. Further, the public has a general right to monitor the functioning of our courts, thereby insuring quality, honesty and respect for our legal system. *Continental Illinois, supra* at 1308. This too must be considered in the balancing of competing interests.

All of the aforementioned rights and interests weigh in favor of releasing the affidavit in question. We now examine the interests which weigh in favor of keeping the affidavit confidential. At the show cause hearing, it was argued the State has an interest in keeping the affidavit confidential since disclosure may, in the future, discourage attorneys who are subjects of disciplinary investigations from submitting such affidavits, thus prolonging costly and time-consuming disciplinary litigation. We believe this is a legitimate concern we should consider in the balancing of competing interests. A further concern expressed at the hearing was the privacy rights of third parties which may, in certain circumstances, weigh in favor of keeping the affidavit confidential, at least as to those parts of the affidavit which concern the third parties. Particularly, the victims of the attorney's wrongdoings may wish to keep the facts surrounding the wrongdoings private and confidential. We recognize the privacy interests of such victims may be

considered in the balancing of competing interests. In contrast, however, the attorney in question has no privacy interests which demand consideration in our analysis. He voluntarily submitted this affidavit which he knew could be publicly disclosed by order of this Court. SDCL 16–19–66.

In the present case, there are no third-party privacy interests which weigh heavily in favor of keeping the affidavit confidential. As noted previously, the decision as to public access to judicial records is a discretion to be exercised in light of the relevant facts and circumstances of the particular case. In the present case, two of the three parties mentioned in the affidavit have filed civil complaints against Johnson for wrongdoings Johnson committed against them in his capacity as an attorney. As these complaints are a matter of public record, we are entitled to take judicial notice of them. *See Nauman v. Nauman,* 336 N.W.2d 662, 666 (S.D.1983). A substantial part of Johnson's affidavit concerns the wrongdoings he committed against these two parties. The allegations of wrongdoing made against Johnson in the two civil complaints are essentially the same as those Johnson admitted to in his affidavit. Since the two parties in question have already publicly revealed the fact Johnson committed unlawful acts against them and also the nature of these unlawful acts, clearly their privacy interests as to these matters, if any, have been waived. Also, we note the media has reported these two civil actions to the public. This, of course, weighs in favor of releasing the affidavit. Johnson also admitted in his affidavit he failed to pay taxes on a certain decedent's estate.[2] This should not be given a great deal of consideration since Johnson's admission relating to this estate casts absolutely no aspersions upon the decedent.

Considering third-party privacy interests in this case are not entitled to a great deal of consideration, the only substantial interest which weighs in favor of keeping the affidavit confidential is the Court's interest in expediting disciplinary proceedings. Under the circumstances of this case, we conclude this interest is insufficient to justify the denial of public access to Johnson's affidavit. In considering whether to afford public access to judicial records, one significant factor which must be considered is whether the public has already been permitted substantial access to the contents of the records. *Newman, supra* at 803. Most of the wrongdoings Johnson admitted to in his affidavit are contained in the two civil complaints filed against Johnson. As noted previously, these complaints are a matter of public record. Hence, the public has already been permitted substantial access to most of the material in the affidavit. In fact, as noted previously, the media has already reported most of the contents of Johnson's affidavit to the public. The media did so by publishing the fact two civil complaints were filed against Johnson and also by publishing the nature of these complaints. The allegations contained in the two civil complaints represent the most serious acts of misconduct Johnson admitted to in his affidavit. The fact these acts have already been publicly disclosed weighs heavily in favor of releasing the affidavit to the public.

Based upon the circumstances presented in this case, we conclude the public and media are entitled to disclosure of Johnson's affidavit. Hence, we deny Johnson's request this Court keep such affidavit confidential. While we recognize the Disciplinary Board has a strong interest in expediting disciplinary hearings, this interest alone is not strong enough under the facts of this case to warrant the denial of public access to Johnson's affidavit. We grant public disclosure to Johnson's affidavit.[3,1]

2. The name of this party and the names of the parties who filed civil actions against Johnson are the only third-party names revealed in the affidavit.

3. In his dissent, Justice Sabers criticizes the Court for ordering Johnson and the State Bar to show cause why the contents of Johnson's affi-

davit should not be released. The decision to issue the show cause order was made by motion at a special court conference on May 7, 1990. The minutes of the conference reveal that Justice Sabers seconded the motion and voted in favor of issuing the show cause order which he

MILLER, C.J. and FOSHEIM, Retired Justice, concur.

HENDERSON and SABERS, JJ., dissent.

FOSHEIM, Retired Justice, sitting for MORGAN, J., disqualified.

HENDERSON, Justice (dissenting).

I respectfully dissent to granting public disclosure of Johnson's affidavit.* Just as in any other civil or criminal case, parties litigating an issue must abide by certain procedural rules in order for our courts to retain jurisdiction over a given matter.

In the present case, it is clear that the Associated Press did not abide by accepted procedural rules. It wrote a letter to former Chief Justice Wuest, with advocacy, and its cost was a 25 cent stamp. It never hired a lawyer and it never made a formal appearance. It never filed a brief. It never filed a Petition for Intervention as a party. It never filed a pleading, such as a motion, to file as a party amicus curiae. It never received any official recognition by this Court that it could appear in this proceeding. It never formally appeared before this Court, by counsel or otherwise. It completely short circuited *all* appellate procedure in the highest court of this state, employing a short letter and a 25 cent postage stamp.

An order was issued by this Court providing that Johnson show cause why the contents of his affidavit should not be re-

leased. This Court erred by doing so and not requiring the Associated Press to proceed by statute. Loyalty to a mistake is no virtue and we should now admit that we made a mistake for the benefit of this Court in the future. To the best of my knowledge, the letter to former Chief Justice Wuest was undated and bears no filing stamp, as of September 24, 1990, by the Clerk of this Court.

Ordinarily, an Order to Show Cause is obtained by ex parte motion supported by an affidavit or other declaration stating the facts on which the motion and order is based. 56 Am.Jur.2d Motions, Rules and Orders § 34 p. 29 (1971). However, the Associated Press never formally petitioned the court to release the Johnson affidavit. Furthermore, no affidavit, which would trigger the Court's jurisdiction to hear the alleged right to have Johnson's affidavit publicly disclosed, was filed. Note the statute set forth below.

Also, this case was heard as an Original Proceeding. Our Clerk's office has filed this case as an Original Proceeding. SDCL 15–25–2 mandates that certain guidelines must be followed when filing an Original Proceeding with the Supreme Court. SDCL 15–25–2 states:

> Application to commence proceeding—Fee—Number of copies filed. Application for permission to commence such action or proceeding and to fix the procedure to be followed therein shall be ac-

---

now criticizes. The minutes further reflect that Justice Wuest was the only Justice voting against the issuance of the show cause order. A majority of our decisions are rendered without oral argument or a hearing of any kind. A large number are expedited without a written opinion.

Contra Justice Sabers' dissent, there is no requirement that cause be shown for the public disclosure of an affidavit pursuant to SDCL 16–19–66. It was and is the position of Justice Wuest that Johnson's affidavit should have been released without a hearing and formal opinion. Had this recommendation been followed, there would have been only one news story rather than a series. Furthermore, Johnson would have been spared the publication of this opinion throughout the legal community. His unfortunate story has been needlessly memorialized for posterity.

4. Rather than addressing the merits of this case, Justice Henderson criticizes the Associated Press and the procedures employed by this Court in arriving at its decision. Justice Henderson voted to issue the show cause order in the form and substance in which it was issued. Further, he voted to issue a formal opinion. Without his vote, the show cause order would not have been issued, nor a formal opinion written, because the Court was divided. The author of the majority opinion opposed and voted against a formal opinion and the procedures employed, but complied with the procedural directions of the majority which constitute the decision of the Court.

* Although I did, in fact, vote in favor of issuing the show cause order, I did so with the same concerns that Justice Sabers explained in his dissent. Namely, that even a "faulty and unfair" hearing is better than none at all.

companied by the form of plaintiff's proposed pleading and by a filing fee. The original and five copies of the application, proposed complaint and supporting papers, if any, shall be filed with the clerk of the Supreme Court.

Finally, the Associated Press was not present during the oral argument, as a party of record, before the Supreme Court regarding this matter, other than to sit in the audience. It has reaped the benefit of thousands of dollars of research, by members of this Court and its legal staff, all as a result of a 25 cent stamp and short letter which, unfortunately, spawned a knee-jerk response by this Court.

It is the Associated Press that desires the release of the affidavit, therefore, the Associated Press should be bound by certain procedural requirements in order to have their demand met. Namely, the Associated Press should have filed a written petition with this Court requesting the release of the Johnson affidavit and should have complied with SDCL 15–25–2 or SDCL 15–26A–74 (amicus curiae statute at appellate court level). It never did so here. Furthermore, the Associated Press and its counsel should have been present at the oral argument regarding this matter, had it first secured permission to advocate before this Court. Need I express that a letter is not a pleading? As an entity which spawned this costly and unique litigation, it made no formal appearance whatsoever. Therefore, it has no standing to make any demand nor trigger a formal opinion on the merits of its contention.

In light of this spontaneous conduct, I believe it is clear that the Associated Press has failed to adhere to well accepted procedural rules. Since these rules were not correctly followed, this Court has no jurisdiction to resolve this matter. Therefore, the majority opinion should be held for naught lest this Court encourage telephonic calls and ex parte letters birthing, without benefit of procedural safeguards, litigation which is inceptually flawed. This Court is absolutely in no position to mediate and write upon spontaneous first class mail letters with the workload that it is burdened with; South Dakota is no exception to the crisis in the appellate courts of this nation. Statistics of the Unified Court System, the Supreme Court of this state being an integral part thereof, reveal: In 1970, this Court handed down 80 opinions, and in 1989, it handed down 190 opinions; this is an increase of 138%. Yet, we still have five Justices although the constitution permits us to have two more Justices if the Legislature so decrees; the filings in 1970 were 130 and in 1989, they dramatically increased to 429, representing an increase of 230%. Were I forced to speculate, my informed intuition, based upon 12 years on this Court, is that the number of appeals will continue to rise episodically in the foreseeable future. This is not all hunch on my part. We now have the availability of legal services, which are often times free, and they substantially affect court case loads. Public defenders for criminal cases are now deeply entrenched in South Dakota. Commissions (by the dozens) exist in South Dakota and they, with other boards (by the dozens) are constantly drafting new rules and regulations to govern the people's lives. I am constantly receiving notices of these rules and regulations, as if I could stop the engulfment of government. Needless to say, the impact on this appellate court is easy to visualize. Crying out for relief from the dictates of these commissions and boards, freighted with heavy substantive consequences, the people stream into the courts of South Dakota. Therefore, this Court is in no position to adjudicate upon informal solicitations, via letters or telephonic communications, spelling untold hours of costly research and the wear and tear on the eyes and bodies of the overworked Justices of this Court. If you, the reader, are chilled in the frigid temperatures of Alaska or bask in the sunny clime of Florida, you might also well consider that we do not have an intermediate court of appeals.

With reference to the author's argument concerning my earlier votes and because I deign to differ, perhaps I can be the sacrificial lamb, and the media will cease and desist from writing this Court letters about *cases* in this Court, which I believe is high-

ly improper. If the media desires to make a motion to intervene, it is entitled to do so, just like any other citizen who desires to be heard in any given case. If I were to follow the logic of the author, I should not have accorded Attorney Johnson any due process at all. He and his lawyer were entitled to notice and an opportunity to come to our State Capitol. Attorney Blackburn did, pursuant to our notice, argue before this Court and made an excellent argument before this Court, the merits of which are addressed in Justice Sabers' dissent. Indeed, I did vote to issue a formal opinion which then gave me an opportunity to address, formally, my concerns that the procedures employed by this Court were flawed. If no formal opinion had been issued, the theory I espouse would never be brought to the attention of the practicing Bar or the news media. Although the majority writer did vote against issuing a formal opinion, he did not, in my opinion, *ever* voice his objection to the "procedures employed"; rather, then acting as the Chief Justice, he received an ex parte letter and began to immediately use it as a basis to recognize the news media as a party, contrary to this Court's appellate procedure and the rules of this Court. I did not like it then and I do not like it now; and I deeply resent the author's criticism for now expressing my opinion on the conference draft, which opinion is bottomed in a deep desire that this institution called the South Dakota Supreme Court, which I have now served for 12 years, remain a formal body. His technique is by using intra-court temporary votes before the conference draft is placed in conference. A Justice's temporary vote, on a case, has not historically been spread out for public view and airing because upon further reflection and study, he can change his mind. Wuest, J., seeks to shatter this 100 year precedent. This body, as an academic institution, can only survive by deliberation and not by quick judgments.

To impugn my free right of expression is to destroy the academic freedom of the members of this august body.

SABERS, Justice (dissenting).

I respectfully object and dissent to the grant of public disclosure of Johnson's affidavit for these reasons:

1. The procedure was faulty and unfair.* The Supreme Court ordered Johnson and the State Bar to show cause *why* the contents of Johnson's affidavit should not be released. This is absolutely backwards. This was done on the basis of a letter request—no petition—no court appearance on the part of the Associated Press. The media should have been required to come into court and show cause *why* the contents of Johnson's affidavit should be released. We should back up, require a new hearing, and do it right.

2. SDCL 16–19–66 provides in part, "... The order disbarring the attorney on consent shall be a matter of public record." Johnson was disbarred on consent by public order and notice on April 26, 1990. The primary consideration is the well-being and protection of the public by public notice and any danger to the public is extinct once the lawyer is disbarred.

3. SDCL 16–19–66 provides further in part, "... However, the affidavit ... shall not be publicly disclosed or made available for use in any other proceeding except upon order of the Supreme Court." This Supreme Court Rule certainly implies confidentially and that good cause must be shown before public disclosure. No good cause has been shown.

4. The "confidential" affidavit procedure has worked very well in the preceding 10 years or more. To my knowledge, this court has never released an attorney's affidavit before.

---

* Former Chief Justice Wuest's footnote number 3 is correct in stating that I "seconded" the motion and voted in favor of issuing the show cause order which I now criticize. Obviously, I voted for the show cause hearing because even a "faulty and unfair" hearing is better than none at all.

It has been beneficial to the public, the court and the Bar to have expeditious removal and disbarment of lawyers in serious trouble. With this ruling and public disclosure of the "confidential" affidavit, there is no longer any reason for a troubled lawyer to "cooperate" with the Disciplinary Board of the State Bar. Any lawyer who fails to advise against such "cooperation" better check his own malpractice insurance for coverage and limits and keep his premiums paid.

5. Since victim's complaints to the State Bar are also given "in confidence," we should not release their names without first obtaining signed written permission to do so. The fact that two of the three victims have already started lawsuits against Johnson may or may not constitute a valid waiver. Obviously, the third victim has not waived anything.