**UNITED STATES of America**

v.

**John Phillip Walker LINDH.**

**No. Crim. 02–37–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

April 25, 2002.

Randy Bellows, United States Attorney's Office, Alexandria, VA, for plaintiff.

William Bruce Cummings, David Thomas Williams, William B. Cummings, P.C., Alexandria, VA, James Brosnahan, San Francisco, CA, for defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

The matter is before the Court on the government's April 16, 2002 Motion for a

Protective Order Regarding Detainee Interview Reports, pursuant to Rule 16(d)(1), Fed.R.Crim.P., and defendant's April 23, 2002 response thereto.[1]

### I.

On February 5, 2002, defendant, John Phillip Walker Lindh, was charged in a ten-count Indictment with, *inter alia,* contributing services to al Qaeda, which the government alleges is a foreign terrorist organization founded and led by Usama Bin Laden. Thus, the government's investigation in this case involves both classified and unclassified materials related to the ongoing federal law enforcement investigation into al Qaeda. Such materials include the reports of interviews of detainees captured in Afghanistan and elsewhere who may have knowledge of al Qaeda or who may have been members of that organization and who are housed primarily at

Guantanamo Bay, Cuba. The government has determined that all or portions of thirteen such reports[2] are required to be disclosed to the defense.[3]

### II.

■■■ Analysis of the government's request for a protective order relating to these interview reports appropriately begins with Rule 16(d), Fed.R.Crim.P., which provides that on a sufficient showing, district courts may "at any time" order that discovery or inspection be restricted. In determining whether such restriction is appropriate, district courts may consider, *inter alia,* "the protection of information vital to the national security." Rule 16, Fed.R.Crim.P., Advisory Committee Notes to 1966 Amendment; *see also Alderman v. United States,* 394 U.S. 165, 185, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). Of course, courts should take care to ensure that the

1. By Orders dated April 17, 2002, (i) the government was permitted to file Attachment A to its motion for a protective order *ex parte* and *in camera* and (ii) defendant was directed to file a response to the government's motion for a protective order by April 23, 2002, which he did. *See United States v. Lindh,* Criminal No. 02–37–A (E.D.Va. Apr. 17, 2002) (Orders).

2. The government has submitted to the Court *ex parte,* for *in camera* review, a complete set of the detainee interview reports, unredacted, as well as a second set of reports with proposed redactions to be disclosed to the defendant. In this second set of reports, the redacted information includes (i) the names of the interviewing agents, (ii) the file numbers assigned, (iii) certain references to other detainees, (iv) the names of certain persons identified by the detainees who have no involvement in this case and who may be the subject of ongoing investigations and (v) information that is neither discoverable pursuant to Rule 16, Fed.R.Crim.P., nor required to be disclosed by *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The government has not redacted the detainee's true name or any information regarding the defendant.

3. Defendant contends that the government concedes these thirteen interview reports contain exculpatory material required to be produced pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Nothing in this Order is intended or should be construed as confirming that the redacted reports to be disclosed to defendant contain exculpatory material under *Brady.* The government's motion does not request a judicial determination concerning whether the unredacted portions of the thirteen reports contain material that must be disclosed pursuant to either Rule 16, Fed.R.Crim.P., or *Brady.* Rather, the motion focuses only on a request for a protective order as to the redacted reports to be disclosed to defendant. Nonetheless, the Court reviewed the government's redactions to ensure that they did not contain material subject to disclosure pursuant to Rule 16, Fed.R.Crim.P., or *Brady.* None of the redactions contain material of this nature. In one instance, however, the Court concluded that a small amount of additional material contained in one of the reports, originally redacted by the government, should be disclosed to the defendant to place the unredacted material in context.

protection afforded to such information is no broader than is necessary to accomplish the national security goals. In this regard, courts should be sensitive to less restrictive alternatives available to achieve this goal. *See Stone v. University of Maryland Medical System Corp.*, 855 F.2d 178, 180–82 (4th Cir.1988) (remanding district court's decision to seal the entire record when less restrictive alternatives were available). And, in determining whether to accord protection to certain materials, and the extent of such protection, courts should weigh the impact this might have on a defendant's due process right to prepare and present a full defense at trial. It is also important for courts to have in mind "[t]he public's right of access to judicial records and documents," "which may be abrogated only in unusual circumstances." *Stone*, 855 F.2d at 182 (citing *In re Knight Publishing Co.*, 743 F.2d 231 (4th Cir.1984)). This case presents precisely these unusual circumstances.

■ Indeed, given the nature of al Qaeda and its activities, and the ongoing federal law enforcement investigation into al Qaeda, the identities of the detainees, as well as the questions asked and the techniques employed by law enforcement agents in the interviews are highly sensitive and confidential. Additionally, the intelligence information gathered in the course of the detainee interviews may be of critical importance to national security, as detainees may reveal information leading to the identification and apprehension of other terrorist suspects and the prevention of additional terrorist acts. Thus, a protective order prohibiting the public dissemination of the detainee interview reports will, in this case, serve to prevent members of international terrorist organizations, including al Qaeda, from learning, from publicly available sources, the status of, the methods used in, and the information obtained from the ongoing investigation of the detainees.

Nor is this result novel; courts in this district and elsewhere, in similar circumstances, have granted protective orders regarding unclassified, but sensitive material "vital to national security." *See, e.g., United States v. Moussaoui*, Criminal No. 01–455–A (E.D.Va. Feb. 5, 2002) (Order) (Brinkema, J.); *United States v. Bin Laden*, 58 F.Supp.2d 113, 121 (S.D.N.Y.1999).

The remaining question is whether the proposed protective order is appropriate in light of the importance of protecting unclassified information vital to national security, while at the same time ensuring that no inappropriate burden is imposed on defendant's right to prepare and present a full defense at trial. In this regard, defendant objects to the proposed protective order in three respects. Specifically, he first argues that his ability to prepare for trial is burdened because the proposed protective order requires pre-screening of investigators and expert witnesses before information contained in the redacted interview reports may be disclosed to them. This requirement, defendant argues, might result in revealing defense strategy to the prosecution.

■ This argument, although not without some force, does not compel the conclusion that no protective order is appropriate. Instead, it appears that the government's interests can be adequately protected and defendant's concerns accommodated by requiring defendant's investigators or expert witnesses to sign a memorandum of understanding with respect to unclassified information and materials covered by the instant protective order in the event defense counsel elects to show or share any unclassified protected information with a particular investigator or expert witness. By signing such a memorandum of understanding, a defense investigator or expert would declare under penalty of perjury under the

laws of the United States that she or he had (i) read and understood the protective order pertaining to these unclassified documents and materials and (ii) agreed to be bound by the terms of the protective order, which would remain binding during, and after the conclusion of these proceedings. Defendant, by counsel, would then be required to file, *ex parte* and under seal, any such memorandum of understanding promptly, and prior to the disclosure of any unclassified protected information to the investigator or expert. In this way, defendant will be at liberty to disclose information from the redacted interview reports to investigators and expert witnesses who are not pre-screened by, or known to, the government, and yet there will be reasonable assurance through the signing and filing of a memorandum of understanding, reviewed *ex parte* and *in camera* by the Court, that the information contained in those reports will be accorded adequate protection.

█ Defendant next argues that his ability to prepare for trial is burdened because the proposed protective order prohibits defense counsel from disclosing information contained in the redacted interview reports to any potential witnesses who are not experts or investigators, without notice to the government and Court approval. Defendant argues that this requirement impermissibly burdens his right to prepare and present a full defense at trial by requiring disclosure to the government the identity of his witnesses. Here again, this concern and the government's interests can both be reasonably accommodated by requiring defendant, by counsel, to follow the procedures set forth above concerning the signing and *ex parte* filing of a memorandum of understanding for all witnesses with whom it wishes to share unclassified protected information who are not experts or investigators and who are not detainees. In those circumstances

where defense counsel desires to share any protected unclassified information with a potential witness who is a detainee, it may be appropriate for the issue to be decided by the Court with notice to the government, to assure that the Court is fully apprised of the risks attendant to disclosure of unclassified protected information to a specific detainee. In this respect, the government will bear a substantial burden of demonstrating that disclosure of any specific, protected information to the detainee should not occur.

█ Finally, defendant argues that the proposed protective order would impair his ability to use the media, as he contends the government has done, to influence public opinion with respect to this case. Defendant has no constitutional right to use the media to influence public opinion concerning his case so as to gain an advantage at trial. No such right inheres in either the Sixth Amendment right to a public trial, or the public's First Amendment right to a free press. Similarly, the government has no right to use the media for this purpose. To the contrary, both parties should recognize and honor an obligation to avoid such media use. Nonetheless, it is a lamentable fact of life that parties in newsworthy trials may attempt to use the media precisely for this purpose. But, given that defendant has no constitutional right to use the media for this purpose, his argument that a protective order would impede such a right is entirely unconvincing.

The result reached here is a balance struck between the government's national security interest in non-disclosure of this unclassified protected information and both the defendant's Sixth Amendment right to a public trial and the public's First Amendment right to a free press. Thus, the procedures adopted herein, including the requirement of *ex parte* submissions

by the defendant, are designed to minimize any burdens on defendant's Sixth Amendment right to prepare and present a full defense at trial. It is also important to note, however, that the balance struck here may change as the focus sharpens on what is relevant and material to the trial. In this regard, much of the material in issue at this time may ultimately prove to be of little or no relevance or materiality to the trial and hence the interest in public disclosure of such material is not great. But, at the time of trial, the focus on unclassified protected information that is relevant and material to the trial will have sharpened, as the parties will have identified specific documents to be used at trial. It is at this point that the balance may well shift in favor of public disclosure, given the teaching of *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 581, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) that "the trial of a criminal case must be open to the public" "[a]bsent an overriding interest." Thus, the parties must be aware that the Court will reevaluate the balance struck here at the time of trial and consider anew whether there is any interest in non-disclosure sufficient to override the compelling interest in ensuring that all trial materials are publicly available.

An appropriate protective order will issue.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.