417 F.3d 424
 MEDIA GENERAL OPERATIONS, INCORPORATED, d/b/a The Tampa Tribune; The New York Times Company, publisher of The New York Times, Petitioners-Appellants,
v.
The Honorable Theresa BUCHANAN, United States Magistrate Judge, Respondent, and
United States of America, Intervenor-Appellee.
ABC, Incorporated; Allbritton Communications Company; The Baltimore Sun Company; Bloomberg News; Cable News Network; CBS Broadcasting, Incorporated; National Broadcasting Company, Incorporated; The Reporters Committee for Freedom of the Press; USA Today Newspaper; The Washington Post Company; WBAL-TV, WYFF-TV, WXII-TV, Operating Units of Hearst-Argyle Television, Incorporated, Amici Supporting Appellant.
 No. 02-2287.
 United States Court of Appeals, Fourth Circuit.
 Argued April 2, 2003.
 Decided August 1, 2005.
 
 COPYRIGHT MATERIAL OMITTED ARGUED: Charles D. Tobin, Holland & Knight, L.L.P., Washington, D.C., for Appellants. Brian David Miller, Assistant United States Attorney, Alexandria, Virginia, for Appellee. ON BRIEF: Leslie S. McAdoo-Brobson, Holland & Knight, L.L.P., Washington, D.C.; James H. Rodio, Holland & Knight, L.L.P., McLean, Virginia; Gregg D. Thomas, Rachel E. Fugate, Holland & Knight, L.L.P., Tampa, Florida; George Freeman, The New York Times Co., New York, New York, for Appellants. Paul J. McNulty, United States Attorney, Michael J. Elston, Assistant United States Attorney, Alexandria, Virginia, for Appellee. Lee Levine, Cameron A. Stracher, Thomas Curley, Levine, Sullivan & Koch, L.L.P., Washington, D.C.; Henry S. Hoberman ABC, Inc., New York, New York; Jerald N. Fritz, Allbritton Communications Co., Washington, D.C.; Stephanie S. Abrutyn, Tribune Company, New York, New York; Charles J. Glasser, Jr., Bloomberg News, New York, New York; David Vigilante, Pilar Keagy-Johnson, Cable News Network, L.P., L.L.P., Atlanta, Georgia; Susanna M. Lowy, CBS Broadcasting, Inc., New York, New York; Susan Weiner, Maya Windholz, National Broadcasting Company, Inc., New York, New York; Lucy A. Dalglish, The Reporters Committee for Freedom of The Press, Arlington, Virginia; Barbara W. Wall, Gannett Co., Inc., McLean, Virginia; Mary Ann Werner, The Washington Post, Washington, D.C.; Eve Burton, Robert J. Hawley, The Hearst Corporation, New York, New York, for Amici Curiae.
 Before WIDENER and MICHAEL, Circuit Judges, and WILLIAMS, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 Affirmed by published opinion. Judge WIDENER wrote the opinion, in which Senior Judge WILLIAMS concurred. Judge MICHAEL wrote a separate opinion concurring in part III and concurring in the judgment.
 OPINION
 WIDENER, Circuit Judge:
 
 
 1
 Petitioners Media General Operations and the New York Times Company appeal the district court's September 19, 2002, order denying petitioners' petition for mandamus for an order directing a federal magistrate judge to (1) unseal search warrant affidavits connected with an ongoing criminal investigation, and (2) direct the Office of the Clerk of the United States District Court for the Eastern District of Virginia to maintain a public docket of search warrant proceedings. Specifically, petitioners allege that the magistrate judge and the district court failed to comply with the procedural requirements established by this court to protect the public's right of access to judicial records in Balt. Sun Co. v. Goetz, 886 F.2d 60, 65 (4th Cir.1989) and that in violation of their common law right of access, they have been denied access to public documents by the office of the Clerk of the United States District Court for the Eastern District of Virginia.
 
 
 2
 We affirm the judgment of the district court.
 
 I.
 
 3
 This dispute, following the terrorist attacks of September, 2001, is claimed to arise out of the government's efforts to ascertain whether individuals and organizations such as businesses and charities have engaged in any such criminal activities and the desire of the press for news of the government's progress to that end. On March 13, 2002, a United States magistrate judge approved search warrant applications submitted by the United States Attorney for the Eastern District of Virginia. The search warrants were submitted to further a preindictment investigation, and as of the date of the hearing, the government had not indicted any individuals connected to the search. To establish probable cause for the warrants, a U.S. customs agent submitted identical affidavits more than 100 pages in length detailing an ongoing investigation. The magistrate judge found probable cause to issue the warrants, which she did.
 
 
 4
 The government also filed a motion to seal the affidavits, asserting that "as described in the affidavits," disclosure "might jeopardize ongoing investigations." The magistrate judge agreed and ordered the affidavits supporting the search warrants sealed until further order of the court. Upon the applications of the Assistant U.S. Attorney for the warrants, and prior to the execution of the search warrants, the clerk's office assigned tracking numbers for each application for a search warrant in the permanent docket book, which is styled MG-PETTY/PEN REGISTER/SEARCH WARRANTS, and is known as the running list. A deputy clerk recorded by hand in the columns adjacent to the search warrant tracking numbers the words "Search Warrant" and "Affidavit Under Seal". The book is located behind the counter in the clerk's office, and the criminal supervisor of the clerk's office asserts without contradiction that the book is "available for public inspection upon request."
 
 
 5
 The search warrants, affidavits, and inventories of items seized were returned to the clerk's office for filing after the execution of the warrants. See Fed. R.Crim. Proc. 41(f). With the exception of the search warrant affidavits, all other pleadings and documents, including the returns and the motions to seal, are not implicated by the March 13, 2002, sealing order and should have been available to the public upon request. Any mistake with reference to that was corrected by the magistrate judge on the record at the hearing on May 30, 2002.
 
 
 6
 By motion dated April 24, 2002, certain occupants of the premises searched moved for return of their property and to unseal the affidavits. The magistrate judge scheduled a hearing on the occupants' motion for May 3, 2002. Although the occupants' motion and the parties' corresponding briefs were not recorded on the index to the running list previously referred to, the clerk's office recorded the occupants' hearing on the hearing calendar located on the public counter, and the motion and briefs in support of the hearing were placed in the corresponding files. After hearing arguments from the occupants and the government, the magistrate judge denied the occupants' motion for return of property and to unseal the affidavits.
 
 
 7
 On May 3, 2002, petitioners sought leave to intervene in the occupants' case for the purpose of moving to unseal the affidavits. The magistrate judge scheduled a hearing on petitioners' motion that was conducted on May 30, 2002. During the hearing, the magistrate judge acknowledged that deputy clerks from the Eastern District of Virginia improperly denied petitioners access to public documents, and stated that she had "discussed this with the clerk's office" and that she thought she had "straightened out" the problem. With regard to petitioners' complaints about the docketing procedure in the clerk's office, the magistrate judge stated that the information petitioners sought was in the files, how the clerk's office numbered and kept track of the documents was purely "administerial," and she would not "micromanag[e] the clerk's office." The magistrate judge also heard petitioners' objection to the sealing of the affidavits, but concluded that "it was clear and apparent from the affidavits that any disclosure of the information there would hamper an investigation." By written order dated May 31, 2002, the magistrate judge granted petitioners' motion to intervene, but denied their motion to unseal the affidavits.
 
 
 8
 On June 10, 2002, petitioners filed a two-count petition for writ of mandamus requesting the United States District Court for the Eastern District of Virginia to direct the magistrate judge to (1) make public the affidavits under seal, and (2) direct the clerk's office to maintain a public docket of proceeding held in connection with search warrants. The United States intervened and on August 9, 2002, moved to dismiss the petition. On August 23, 2002, petitioners filed their opposition brief and moved for summary judgment. By written order filed September 19, 2002, the district court granted the government's motion to dismiss and denied petitioners' motion for summary judgment.
 
 
 9
 Petitioners now appeal, and we affirm.
 
 II.
 
 10
 The press and the public have a common law right of access to judicial documents. In Nixon v. Warner Communications, Inc., 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978) the United States Supreme Court stated,
 
 
 11
 It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents.... American decisions generally do not condition enforcement of this right on a proprietary interest in the document or upon a need for it as evidence in a lawsuit. The interest necessary to support the issuance of a writ compelling access has been found, for example, in the citizen's desire to keep a watchful eye on the workings of public agencies, and in a newspaper publisher's intention to publish information concerning the operation of government.
 
 
 12
 Nixon, 435 U.S. at 597-98, 98 S.Ct. 1306 (citations and footnote omitted). This court has held that the press and public enjoy a qualified common law right of access, but not a First Amendment right, to judicial records including affidavits supporting investigative search warrants. Balt. Sun Co. v. Goetz, 886 F.2d 60, 64-65 (4th Cir.1989). But the right of access is qualified, and a judicial officer may deny access to search warrant documents if sealing is "essential to preserve higher values" and "narrowly tailored to serve that interest." Goetz, 886 F.2d at 65-66. Common law rights provide the press and the public with less access than First Amendment rights, and the decision to seal or grant access to "warrant papers is committed to the sound discretion of the judicial officer who issued the warrant" and reviewed for abuse of discretion. Goetz, 886 F.2d at 65; In re Washington Post Co., 807 F.2d 383, 390 (4th Cir.1986).
 
 
 13
 We have held that in determining whether to seal judicial documents, a judicial officer must comply with certain procedural requirements. Washington Post, 807 F.2d at 390. The decision to seal documents must be made after independent review by a judicial officer, and supported by "findings and conclusions specific enough for appellate review." Goetz, 886 F.2d at 65-66. If a judicial officer determines that full public access is not appropriate, she "must consider alternatives to sealing the documents" which may include giving the public access to some of the documents or releasing a redacted version of the documents that are the subject of the government's motion to seal. Goetz, 886 F.2d at 66.
 
 
 14
 Petitioners contend that the magistrate judge's sealing order should be overturned because the order violates the procedural requirements delineated in Goetz, Washington Post, and In re Knight Pub. Co., 743 F.2d 231 (4th Cir.1984). We first address the question of whether the motion to seal should have been docketed and petitioners given an opportunity to object prior to the entry of the initial sealing order. The government's search warrant application and motion to seal were filed on March 13, 2002. The magistrate's initial sealing order was entered on the same day and prior to the execution of the search warrants. While petitioners appeared to have contended otherwise before the magistrate judge, petitioners now concede that they have no right to view or object to sealing orders prior to the execution of search warrants. In any event, these arguments have been foreclosed squarely by both United States Supreme Court and Fourth Circuit precedent. Goetz, 886 F.2d at 64 (relying on Franks and stating that "proceedings for the issuance of search warrants are not open.") See Franks v. Delaware, 438 U.S. 154, 169, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) (stating search warrant application "is necessarily ex parte, since the subject of the search cannot be tipped off to the application for a warrant lest he destroy or remove evidence"). A rule to the contrary would endanger the lives of officers and agents and allow the subjects of the investigation to destroy or remove evidence before the execution of the search warrant. Just as importantly, premature disclosure by the executive of the object of an investigation is not a Constitutional or common law pre-requisite to further proceedings.
 
 
 15
 We agree that members of the press and the public must ordinarily be given notice and opportunity to object to sealing of public documents. But, in the context of search warrant documents, the opportunity to object does not arise prior to the entry of a sealing order when a search warrant has not been executed. As recognized by Goetz, the "motion to seal all or part of the [search warrant] papers is usually made when the government applies for the warrant." 886 F.2d at 65. The Goetz court explicitly recognized that "[t]he procedures outlined in" Washington Post and Knight had to be "modified to accommodate the sealing of search warrant papers." Goetz, 886 F.2d at 65. In the context of a search warrant application, "[s]ince the application and issuance of a warrant are necessarily closed to press and public," Goetz, 886 F.2d at 65, notice prior to the entry of an initial sealing order is not required. Rather, the notice requirement is fulfilled by docketing "the order sealing the documents," Goetz at 65, which gives interested parties the opportunity to object after the execution of the search warrants. Goetz, 886 F.2d at 65. ("If someone desires to inspect the papers, an opportunity must be afforded to voice objections to the denial of access."). Because the sealing order was made public upon the execution of the search warrant and petitioners were then given an opportunity to object to the sealing of the affidavits, the notice requirement was satisfied.
 
 
 16
 We turn next to petitioners' argument that the order denying the motion to unseal failed "to articulate any findings supporting sealing of the search warrant affidavits" or to consider alternatives to sealing in violation of circuit precedent. Petitioners take the position that whenever a judicial officer enters an order sealing search warrant materials, the sealing order must be accompanied by a separate order detailing why sealing is appropriate. We decline to adopt the blanket rule suggested by petitioners.
 
 
 17
 This court has stated that in entering a sealing order, a "judicial officer may explicitly adopt the facts that the government presents to justify sealing when the evidence appears creditable." Goetz, 886 F.2d at 65. Moreover, "[i]f appropriate, the government's submission and the officer's reason for sealing the documents can be filed under seal." Goetz, 886 F.2d at 65.
 
 
 18
 The magistrate judge issued three orders determining that sealing was appropriate. We have reviewed the transcript of the hearing and magistrate judge's order and it is apparent that the magistrate judge, after independent review, relied on the affidavits and the reasons for sealing presented by the government to support her decision. She incorporated the affidavits into her decision stating, "it was clear and apparent from the affidavits that any disclosure of the information there would hamper an investigation," that the affidavits "amply supported the sealing," and that the "Government's reasons for sealing remain compelling now." At the hearing on petitioners' motion to unseal the documents, the government presented numerous reasons why sealing was appropriate: the preliminary stage of the investigation; the potential impact on the parties searched if unproven criminal allegations were made public; the impact of the affidavit's release on broader investigations in other districts; and the privacy interests in personal tax information relating to the persons being searched.
 
 
 19
 A review of the lengthy, detailed, and thorough affidavits in this case demonstrates how release of any part of the search warrant affidavits could harm these interests. As noted by the magistrate judge, "the affidavit contained sensitive details of an ongoing investigation" and it is "clear and apparent from the affidavits that any disclosure of the information there would hamper" this ongoing investigation.
 
 
 20
 Even if petitioners correctly assert that the existence of an ongoing investigation will not always justify a sealing order, under the circumstances of this case, the documents presented to the court demonstrate that the government's interest in continuing its ongoing criminal investigation outweighs the petitioners' interest in having the document opened to the press and the public. While petitioners may have preferred that the magistrate judge issue a separate and detailed written memorandum opinion, we require a court to "state the reasons for its decision to seal supported by specific findings, and the reasons for rejecting alternatives to sealing" to provide this court with sufficient information for meaningful appellate review. Knight, 743 F.2d at 235. That the government's and judicial officer's reasons for sealing may also be placed under seal, Goetz, 886 F.2d at 65, demonstrates that this requirement is for the benefit of the court, not the public. Where, as here, the government's explanations and the judicial officer's reasons for sealing are patently apparent upon consideration of the documents at issue and when the record provides sufficient information for appellate review, there is no requirement that the district court or magistrate judge prepare separate, detailed orders. Upon consideration of the affidavits in question, we find that the magistrate judge's reasons for sealing and rejecting alternatives to sealing are patently apparent from the affidavits and that sealing the affidavits was not an abuse of discretion.
 
 
 21
 A principal part of the complaint of the petitioners is expressed in their brief as follows:
 
 
 22
 It [the district court] never even undertook to "examine the affidavit when considering [the] magistrate's order."
 
 
 23
 Br. p. 42.
 
 
 24
 On account of that argument, the district court held a hearing on the government's motion to correct or modify the record. At the hearing, the petitioners adhered to the position taken in their brief:
 
 
 25
 And there is nothing in the transcript or your order that recites that you did it.
 
 
 26
 March 21, 2003 transcript at 5.
 
 
 27
 The district court correctly denied the motion, the substance of its decision being:
 
 
 28
 THE COURT: Well, I don't think it is appropriate, I think that you can assume that I looked at all the evidence in this case, but I don't think it is appropriate for me or necessary for me to go back through the decisions I make and set out in particularity what I did and what I did not review.
 
 
 29
 I am going to deny your motion. There is something about this issue that just doesn't seem right to me. I don't think that I ought to entertain even motions to go back and tell counsel what I reviewed and what I did not review. I review all the evidence in the cases.
 
 
 30
 March 21, 2003 transcript, p. 6.
 
 
 31
 The argument as set forth in the brief is without evidence to support it, and, in any event, it is frivolous. The argument of the petitioners, that the decision in Goetz, 886 F.2d. at 66, requires a district judge reviewing the provisions of an affidavit to state in his decision that he has read the affidavit, is not an arguable construction of Goetz, in which case the district judge had reviewed the "unredacted version of the government's response ... but refused to examine the affidavit itself." Goetz, 886 F.2d at 63. (Emphasis added.)
 
 
 32
 To require a district judge, as sought here, to recite in his order each paper that he has read in arriving at his decision is a requirement not worthy of serious consideration. Relief on that argument is denied.
 
 III.
 
 33
 Most of the balance of this opinion will be devoted to the request of the petitioners for a writ of mandamus which would direct the manner in which the office of the clerk of the court in the Eastern District of Virginia keeps certain records of that court. The "STATEMENT OF ISSUES PRESENTED FOR REVIEW," Br. p. 4, is as follows:
 
 
 34
 1. Upon the return of an executed, sealed search warrant and its filing with the Clerk of the Court under Fed. R.Crim.P. 41, must the Clerk note on a ready, clear and discernible public docket: (1) the warrant itself; (2) the Government's motion to seal the search warrant affidavits; (3) the judge's sealing order; (4) all other documents filed with the warrant; and (5) all subsequent proceedings and filings concerning the warrant?
 
 
 35
 There has not been a sealed search warrant in this case. Neither has there been any improper denial of access to the papers involved in this case other than through simple mistakes of some of the deputy clerks or other like employees in the clerk's office, so we will address the affidavits filed by the petitioners in support of their petition.
 
 
 36
 Before addressing with particularity the facts shown by the petitioners' affidavits, we should mention a misconception and an omission in the papers presented to us.
 
 
 37
 The petitioners treat a "pen register" as a book kept in the clerk's office. A pen register, in fact, is defined in pertinent part in 18 U.S.C. § 3127(3):
 
 
 38
 [t]he term "pen register" means a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted....
 
 
 39
 The device is addressed at least in 18 U.S.C. §§ 3121, 3122, 3123, 3124, 3125, and 3126, as well as 3127. We add that the government has not helped to clear up such misconception.
 
 
 40
 Federal Rule of Criminal Procedure 55 provides in terms that:
 
 
 41
 The clerk of the district court must keep records of criminal proceedings in the form prescribed by the Administrative Office of the United States Courts. The clerk must enter in the records every court order or judgment and the date of entry.
 
 
 42
 Those same provisions (with change only in grammar) were in effect during all times relevant to this proceeding. The Guide to Judiciary Policies and Procedures, Vol. IV, Chapter 3, § 3.01, Search Warrants, deals with the records suggested or required by the Administrative Office with relation to search warrants. Despite the fact that a principal part of this case concerns itself with the records relating to search warrants, neither Rule 55 nor Chapter 3, Vol. IV of the Guide to Judiciary Policies and Procedures is mentioned in the briefs or was mentioned in oral argument. Chapter 3 is included as an appendix to this opinion.
 
 
 43
 In affidavits, petitioners assert that on three occasions they were denied access to various public documents. Specifically, petitioners maintain that (1) on April 26, 2002, a clerk's office employee denied a paralegal for petitioners' attorneys access to search warrant documents, erroneously stating that there was no file number 02-MG-114; stated that there was no information on the docket sheet; stated that the record was sealed; and refused to give the paralegal a copy of the docket sheet;[1] (2) on May 21, 2002, a deputy clerk informed one of petitioners' attorneys that all the search warrant materials were sealed,[2] and (3) on August 19, 2002, another employee of the clerk's office denied a paralegal for petitioner's attorneys access to the pen registry, stating that it was not a public document. That same paralegal was not permitted to photocopy entries in the red ledger book.[3]
 
 
 44
 With respect to the affidavits relating requests to see certain of the records, which requests were made on April 26, 2002 and May 21, 2002, the government does not take the position that the employees in the clerk's office who denied access to the paralegal and the attorney were correct in the denial of access. At the hearing before the magistrate judge on May 30, 2002, the magistrate judge announced in open court that the search warrant itself, its return, and the motion to seal, should not have been under seal. She also announced:
 
 
 45
 The only thing that's under seal is the affidavit which accompanies the application, and the application is really nothing anyway.
 
 
 46
 So, on May 30, 2002, prior to the time this suit was filed on June 10, 2002, all of the papers which the petitioners desired to examine had been made available to them by order of the magistrate judge, with the exception of the affidavit supporting the sealing of the search warrant.
 
 
 47
 The affidavit of Kathy Bartell, the supervisor of the criminal section in the office of the clerk of the court, relates various steps taken with respect to the search warrant involved in this case. While it is not patent from the face of the affidavit that the actions taken in that clerk's office correspond precisely with Vol. IV, Chapter 3 of the Guide to Judiciary Policies and Procedures, there is nothing to show that the clerk's office was not in substantial compliance with its duty under that chapter and Federal Rules of Criminal Procedure 55 and 41(b). Of more consequence, the petitioners have not shown that a writ of mandamus was necessary in order for them to see the public records involved in this case. There seems to be little doubt that the personnel in the clerk's office made several unfortunate errors, but there is no hint that the errors were anything but inadvertent or were the result of a deliberate secreting of records that the petitioners were entitled to see. A writ of mandamus is issued to require an officer or employee of the United States to perform a duty owed to the plaintiff. 28 U.S.C. § 1361. Mandamus is only issued if the petitioner has no other adequate means to attain the relief he desires and that his right to the issuance of the writ is clear and indisputable. Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 35, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980). In this case, the magistrate judge had made available to the petitioners all of the records they were entitled to see prior to the time their petition for mandamus was filed. Petitioners' attorneys were present at the hearing in which the magistrate judge announced that all of the papers except the affidavit were available to them. It may be that the clerk's office does not follow the suggestions or requirements of the Administrative Office in the Guide to Judiciary Policies and Procedures, and even if it does, it may be that those policies and procedures are contrary to some statutory or Constitutional principle. But that is not the question which was presented here. As the district court related, the petitioners did not even go to a supervisor in the clerk's office when access was denied, instead they filed this petition even after permission had been granted to them to see the sought-for papers. Petitioners had other adequate means to attain the relief desired, so this right to the issuance of the writ was not clear and indisputable. If the petitioners wish to correct some procedure in the clerk's office, that is another matter upon which we express no opinion.
 
 
 48
 Again, with respect to the affidavits upon which the search warrants were based being kept under seal, the magistrate judge's finding was well expressed as follows:
 
 
 49
 The only real serious argument here is whether or not the affidavit supporting the application supports sealing it.
 
 
 50
 And I find, and as I already found, when I entered the sealing order, that the affidavits contained sensitive details of an ongoing investigation. The affidavits were detailed. They were thorough. I believe that it was clear and apparent from the affidavits that any disclosure of the information there would hamper an investigation.
 
 
 51
 I think that they amply supported the sealing, and I believe that the disclosure of the affidavits may well jeopardize an ongoing investigation.
 
 
 52
 I find that the Government's reasons for sealing remain compelling now. There's nothing now that's different from when I signed the affidavit— signed the search warrants a couple of months ago.
 
 
 53
 And I believe that those reasons for sealing continue to outweigh the intervenors right of access to the information.
 
 
 54
 So the motion is denied. Thank you.
 
 
 55
 App. pp.238-39.
 
 
 56
 And the district court, in its opinion, affirmed the magistrate judge as follows:
 
 
 57
 This court finds that the magistrate judge's findings and conclusions were more than sufficient to support sealing the search warrant affidavits. The magistrate judge set forth her reasoning for granting government's motion to seal with great detail. She examined the government's affidavits and commented on their detail and thoroughness. She considered the circumstances surrounding the criminal investigation. She concluded that the government did in fact have a compelling interest in protecting an on-going criminal investigation. Finally, she observed that these circumstances had not changed since she initially ordered that the affidavits remain under seal. The magistrate judge made a thorough and independent evaluation and did not in any respect merely adopt the government's findings of fact. Moreover, these findings, together with the submissions of the government referred to by the magistrate judge, create an ample record for appellate review. The detail of the magistrate judge's ruling went well beyond what is required by applicable case law.
 
 
 58
 An appropriate order shall issue.
 
 
 59
 App. p. 365.
 
 
 60
 The same affidavit was filed in support of the sealing of each of the warrants involved in this case and has been described in the opinions of the magistrate judge and the district court referred to in this opinion. We add only that those descriptions of the affidavit are accurate. The affidavit is 106 pages in length, to which are added five attachments, A through E, which are 39 pages in length, a total of 145 pages. The affidavit was prepared with a great deal of care and attention to detail. In our opinion, the affidavit contains sensitive details of an ongoing investigation, which may well jeopardize the ongoing investigation, as concluded by the magistrate judge, and we agree with the district court that it is clear and apparent from the affidavit that any disclosure of any of the information there would hamper the investigation.
 
 
 61
 The judgment of the district court in denying the petition for a writ of mandamus and in its refusal to unseal the affidavit on which the search warrants were based is accordingly
 
 
 AFFIRMED.
 [4]
 
 
 
 Notes:
 
 
 [1]
 That mistake was apparently due to a belief that the book containing the docket sheet was not to be photocopied because of damage to the binding of the book by placing the same on a photocopier
 
 
 [2]
 The government makes no issue that the affidavit was made by an attorney appearing in the case. SeeUnited States v. Howard, 115 F.3d 1151, 1155 (4th Cir.1997).
 
 
 [3]
 The red ledger book is not otherwise identified. Its connection with this case is not apparent, and we no longer consider it. The "pen registry" is apparently the running list
 
 
 [4]
 The government's motion to file a supplemental appendix, which motion was filed April 1, 2003, is granted
 
 
 
 62
 MICHAEL, Circuit Judge, concurring in part III and concurring in the judgment:
 
 
 63
 I concur in part III of the majority's opinion. As to part II, however, I concur only in the judgment affirming the denial of mandamus relief. Under our longstanding circuit precedent, a judicial officer who seals documents supporting a search warrant must provide justification for her decision at the time of the sealing. Here, the magistrate judge did not justify her sealing decision until later, after the newspaper petitioners filed a motion to unseal. This procedure was in error, but it turned out to be harmless because the judge subsequently explained that the sealing was justified for reasons that were apparent to her at the time the order to seal was entered. I am content to concur in the judgment because I do not read part II to suggest that after-the-fact justification is accepted procedure.
 
 
 64
 Several procedural requirements must be followed when a judicial officer seals documents supporting a search warrant. Ante at 429-30. First, the judicial officer must "state the reasons for [her] decision to seal supported by specific findings." In re Knight Publ'g Co., 743 F.2d 231, 235 (4th Cir.1984). "The judicial officer may explicitly adopt the facts that the government presents to justify sealing ... [b]ut the decision to seal must be made by the judicial officer." Balt. Sun Co. v. Goetz, 886 F.2d 60, 65 (4th Cir.1989). Second, "the judicial officer must consider alternatives to sealing the documents. This ordinarily involves disclosing some of the documents or giving access to a redacted version." Id. at 66 (citations omitted). Third, a judicial officer must give notice to the public by docketing the order sealing the documents. Id. at 65. All of these procedures "must be followed when a [judicial officer] seals judicial records or documents." Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 178, 179-80 (4th Cir.1988) (emphasis added). In other words, the procedures must be followed at the time of sealing. This makes sense because the procedures are in place not only to "make possible meaningful review of a decision to seal" but also to "ensure that the decision to seal the records will not be made lightly." Id. at 182.
 
 
 65
 In the present case the only contemporaneous evidence of the magistrate judge's decision to seal the affidavits underlying the search warrants was the actual order to seal, which provides: "Upon motion of the United States Attorney, it is hereby ORDERED, ADJUDGED AND DECREED that the affidavit[s] supporting the search warrant[s] in this case be placed under seal until further order of this Court." J.A. 18. The order provides no evidence that the magistrate judge followed the correct procedural requirements for sealing the affidavits, and as a result there is no indication that she engaged in the reasoned deliberation required of a judicial officer before documents are sealed. This compels the conclusion that the magistrate judge erred in not following the required procedures at the time of sealing.
 
 
 66
 Though the magistrate judge erred, the error does not warrant reversal here. When the newspaper petitioners moved to unseal the affidavits, the magistrate judge corrected her error by complying with the procedural requirements and providing justifications that had been apparent to her at the time of the sealing. At the hearing on the motion to unseal, she provided reasons for her "decision to seal supported by specific findings." In re Knight Publ'g, 743 F.2d at 235. Specifically, she found that "the affidavits contained sensitive details of an ongoing investigation" and that disclosure "may well jeopardize [the] ongoing investigation." J.A. 238-39. Moreover, it appears that she considered alternatives to sealing, such as releasing part of the affidavits or redacted versions, when she stated "it was clear and apparent from the affidavits that any disclosure of the information there would hamper an investigation." J.A. 238 (emphasis added). As the majority correctly concludes, these justifications are sufficient, and sealing the affidavits was not an abuse of discretion. Ante at 431. However, it should be emphasized that such after-the-fact justifications must not be taken as a substitute for timely compliance with the procedural requirements for sealing documents supporting a search warrant. In sum, the proper course is to comply with the procedural requirements at the time of sealing.
 
 
 APPENDIX
 
 3.01. Search Warrants
 1. a. Introduction
 
 67
 The Fourth Amendment to the United States Constitution provides:
 
 
 68
 The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
 
 
 69
 b. History of the Search Warrant
 
 
 70
 The concept of unreasonable search and seizure was an 18th century reaction regarding two separate evils, one on each side of the Atlantic Ocean. The general warrant and writ of assistance were instruments which provided the authorities the power to enter anywhere and seize any persons or things, at anytime, with little or no regard to any expectation of privacy.
 
 
 71
 In England, general warrants were used by the King in an attempt to stop the publishing of what was then referred to as seditious libel (e.g., documents that incited rebellion against the authority of the state). In the colonies, writs of assistance were used, again by the King of England, to enforce customs and tax laws. Taxes on wine, tea, and stamps were assessed by the British Parliament in an attempt to retire a portion of the French and Indian war debt. These taxes, of course, were met with great resistance by the colonists. It was this resistance that led, in part, to the American Revolution in 1775.
 
 
 72
 In England, the battle against the general warrant was being fought in the courts. Cases such as Huckel v. Money (Chief Justice Charles Pratt, Lord Camden, 1763); Leach v. Money (Chief Justice William Murray, Lord Mansfield, 1765); and Entick v. Carrington (Chief Justice Charles Pratt, Lord Camden, 1765) laid the foundation of one of the most exciting chapters of legal history. In what was an incredible triumph for the absolute impartiality of British justice, aristocratic judges returned verdicts against members of their own class, condemning the use of general warrants.
 
 
 73
 The search and seizure of an individual's personal property cannot extend beyond the intent of the Constitution and federal laws. The most important consideration underlying the Fourth Amendment's protection is the reasonable expectation of privacy and security on the part of every citizen, against arbitrary intrusions and seizures by governmental authorities.
 
 
 74
 c. Search and Seizure Rule
 
 
 75
 Search and seizure is governed by Rule 41 of the Federal Rules of Criminal Procedure.
 
 
 76
 The rule specifies who has the authority to issue warrants. It states, in part:
 
 
 77
 Upon the request of a federal law enforcement officer or an attorney for the government, a search warrant authorized by this rule may be issued (1) by a federal magistrate, or a state court of record within the federal district, for a search of property or for a person within the district, and (2) by a federal magistrate for a search of property or for a person either within or outside the district if the property or person is within the district when the warrant is sought but might move outside the district before the warrant is executed. Fed.R.Crim.P. 41(a).
 
 
 78
 d. Maintaining a Retrieval System
 
 
 79
 Whenever search warrant materials are returned to the clerk's office by the magistrate judge, the clerk's office is responsible for the safe and secure keeping of these materials. Federal Rule of Criminal Procedure 41(g) states that the magistrate judge "shall attach to the warrant a copy of the return, inventory and all other papers in connection therewith."
 
 
 80
 In many courts, a copy of the search warrant is sent to the clerk's office when the government agent is given the original search warrant. The search warrant is placed in a special envelope (or file folder) which can be sealed, if necessary. Either a magistrate judge case number or a miscellaneous number can be assigned either manually or by the automated systems. If assigned manually, the magistrate judge case number should be recorded in a log with pertinent information (e.g., magistrate judge name, date, type of warrant). The case files and the log should be kept in a vault or another secure area. See Chapter 10 of this manual for a discussion concerning miscellaneous actions.
 
 
 81
 When the search warrant is returned, a magistrate judge docket sheet or a miscellaneous docket should be opened using the magistrate judge case number or miscellaneous case number either manually or on the automated systems. If manually, an index card should be prepared at this time. The ICMS CRIMINAL automated system provides an automated index system. The search warrant and any other documents are removed from the vault or secure area and placed in a case file with the magistrate judge case number or miscellaneous number on the front of the folder. The case file folder is then placed with the other criminal case files or in a separate part of the file area for magistrate judge cases, or in the miscellaneous files.
 
 
 82
 If the search warrant is ordered to be sealed, the procedures in § 3.01.f, below, of this manual, should be followed.
 
 
 83
 In some instances, it may be necessary, or the United States Attorney's Office may request, that the search warrant materials be placed in the criminal case file folder with the rest of the criminal pleadings.
 
 
 84
 e. Returned Unsealed Search Warrants
 
 
 85
 Unsealed search warrants should be indexed and placed in a file folder with a magistrate judge case number or miscellaneous number and caption. They should then be processed in the usual manner.
 
 
 86
 f. Returned Sealed Search Warrants
 
 
 87
 Records can be sealed only by order of the court or by special provision (e.g., Federal Rule of Criminal Procedure 6 for grand jury matters). If the search warrant is sealed, it should be sealed in an envelope. To provide additional security, a deputy clerk's initials or signature should be written across the edge of the envelope closure and tape placed on top of the signature. If the tape is removed or tampered with, the initialing or signature would reflect it. Sealed warrant information should be stored in a locked file cabinet, or in a vault, or both. The sealed folder should have some identification on it (e.g., a magistrate judge case number or a miscellaneous number from a sequential list of numbers used for sealed material). A listing or index of sealed materials, using the minimum amount of information required to locate the material, should be provided.
 
 
 88
 Currently, sealed records cannot be forwarded to a Federal Records Center for storage. The court must first enter an order unsealing them. The records are then handled according to the provisions of the records disposition schedule. See the Volume 1, Chapter 12, Part A.