**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 23, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

GARY L. WALKER,

     Defendant - Appellee.

------------------------------

GWENDOLYN MAURICE LAWSON,
DEMETRIUS K. HARPER, CLINTON A.
STEWART, DAVID A. ZIRPOLO, and
KENDRICK BARNES,[*]

     Movants - Appellants.

_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

GARY L. WALKER,

     Defendant - Appellee.

------------------------------

No. 17-1415
(D.C. Nos. 1:15-CV-02223-CMA
and 1:09-CR-00266-CMA-3)
(D. Colorado)

No. 18-1273
(D.C. No. 1:15-CV-02223-CMA
and 1:09-CR-00266-CMA-3)
(D. Colorado)

[*] Collectively, we refer to these five appellants as the "17-1415 Appellants." Section II(A) discusses the proper identity of the Movants-Appellants in Case Number 17-1415. In short, although the notice of appeal also identified David A. Banks as an appellant, Gwendolyn Maurice Lawson's representation of Mr. Banks terminated prior to the motions and notice of appeal she filed on behalf of herself, the other named Appellants in Case Number 17-1415, and Mr. Banks.

COLORADO SPRINGS FELLOWSHIP
CHURCH,

    Movant - Appellant.

_____

**ORDER AND JUDGMENT**[**]

_____

Before **BRISCOE**, **MURPHY**, and **McHUGH**, Circuit Judges.

_____


    Gary L. Walker, a former member of the Colorado Springs Fellowship Church ("CSFC"), was convicted of one count of conspiracy to commit mail fraud arising out of a business operated by CSFC members. He filed a 28 U.S.C. § 2255 motion, in part raising a claim of ineffective assistance of sentencing counsel. The district court convened an evidentiary hearing, at which sixteen witnesses testified, including Mr. Walker; former CSFC members; and Gwendolyn Maurice Lawson and Joshua Lowther, counsel for Mr. Walker at sentencing. The district court concluded Ms. Lawson, who is a member of the CSFC, operated under a conflict of interest because Pastor Rose Banks of the CSFC dictated counsel's strategy.

_____

[**] After examining the briefs, the appellate appendices, and the restricted records provided by the government, this panel has determined unanimously that oral argument would not materially assist in the determination of these appeals. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The cases are therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

Mr. Walker moved to restrict access to the transcript of his § 2255 hearing, and the district court granted the motion. Ms. Lawson, on behalf of herself and Mr. Walker's codefendants, twice moved to obtain the hearing transcript. The district court predominantly denied the motions but permitted Ms. Lawson access to the portion of the transcript containing her own testimony. Ms. Lawson, again on behalf of herself and Mr. Walker's codefendants, noticed an appeal, commencing Case Number 17-1415. Thereafter, the CSFC moved to unseal the transcript. The district court denied the CSFC's motion, concluding that releasing the transcript was likely to result in CSFC members harassing and threatening Mr. Walker, as well as the former CSFC members who testified at the § 2255 hearing. The CSFC appealed, thereby initiating Case Number 18-1273.

The 17-1415 Appellants and the CSFC argue to this court that the strong presumption in favor of the public right of access to judicial records exceeded Mr. Walker's interest in restricting access to the transcript. The 17-1415 Appellants raise four additional arguments for vacating or reversing the district court's denial of their motions to receive the transcript. We vacate the district court's order as to the CSFC and remand for further proceedings because the district court did not adequately account for the strong presumption in favor of public right of access to judicial records and did not narrowly tailor its orders restricting access to the transcript. We, however, affirm the district court's rulings on the motions to receive the transcript by the 17-1415 Appellants. Unlike the CSFC, the 17-1415 Appellants did not raise a public right of access argument in their motions to the district court.

3

And the four remaining arguments of the 17-1415 Appellants are either also unpreserved or wholly without merit.

## I. BACKGROUND

### A. *Mr. Walker's Conviction & Sentence*

Mr. Walker, as well as his codefendants David A. Banks, Demetrius K. Harper, Clinton A. Stewart, David A. Zirpolo, and Kendrick Barnes, were all members of the CSFC. These six individuals helped run IRP Solutions Corporation ("IRP"), a software development company. *United States v. Banks*, 761 F.3d 1163, 1170–71 (10th Cir. 2014). In the course of running IRP, Mr. Walker and his codefendants falsified employee time cards and hired several staffing companies without having any ability to pay for their services. *Id.* at 1171–73. A grand jury indicted Mr. Walker and his codefendants on various mail fraud and wire fraud charges. *Id.* at 1173. Mr. Walker and his codefendants proceeded pro se for their trial and were convicted on multiple counts. *Id.* at 1173–74.

For purposes of sentencing and appeal, Mr. Walker, Mr. Harper, Mr. Stewart, Mr. Zirpolo, and Mr. Barnes retained Mr. Lowther and Ms. Lawson as counsel.[1] *See id.* at 1169. Meanwhile, after Ms. Lawson withdrew from representing Mr. Banks,[2] the court appointed Charles Henry Torres as counsel for Mr. Banks, *see id*. At

---

[1] At that time, Ms. Lawson was married and her legal name was Gwendolyn Maurice Solomon. *See United States v. Banks*, 761 F.3d 1163, 1169 (10th Cir. 2014).

[2] Ms. Lawson's representation of Mr. Banks was limited to a post-trial, pre-sentencing bond hearing.

4

sentencing, and over Mr. Walker's objection, the district court concluded Mr. Walker was a leader of IRP and increased his United States Sentencing Guidelines Manual range accordingly. Mr. Walker moved for a downward variance, focusing predominantly on his personal characteristics and the potentially legitimate nature of IRP, but not presenting arguments about how his faith in God, the CSFC, and Pastor Banks influenced his actions when operating IRP. The district court rejected Mr. Walker's request for a downward variance and sentenced him to 135 months' imprisonment. This court affirmed the district court's judgment. *Banks*, 761 F.3d at 1202.

### B.      *Mr. Walker's § 2255 Proceeding*

Mr. Walker submitted a § 2255 motion to the district court, accompanied by a motion to restrict access to his § 2255 filing. The § 2255 motion and the memorandum in support of the motion to restrict are marked as "restricted document-Level 2" such that only Mr. Walker, the government, and the court can access the documents. Mr. Walker's § 2255 motion raised three claims, including that Ms. Lawson operated under an actual conflict of interest when representing him at sentencing because Pastor Banks directed Ms. Lawson's mitigation strategy. The Government filed a non-restricted response to Mr. Walker's § 2255 motion. The district court convened a three-day evidentiary hearing, at which sixteen witnesses testified.[3] The witnesses included (1) Mr. Walker; (2) Vernon Lee Gaines, a process

---

[3] The minute entries from the hearing reflect that fifteen witnesses testified. A review of the transcript reveals a sixteenth witness testified.

server; (3) Ms. Lawson; (4) Mr. Lowther; (5) several former CSFC members; and (6) a witness offered as an expert for the standard of a reasonably competent criminal defense attorney. Each witness testified in open court. The district court granted Mr. Walker's § 2255 motion as to his claim that Ms. Lawson operated under an actual conflict of interest when she represented him at sentencing. At resentencing, the district court reduced Mr. Walker's sentence to seventy months' imprisonment.

After announcing Mr. Walker's new sentence, the district court addressed Mr. Walker's relationship with the CSFC and Pastor Banks, a discussion which sheds some light on the restricted documents that we have reviewed but do not discuss in our opinion. In short, the district court noted the control the CSFC and Pastor Banks held over Mr. Walker during the commission of his offense, including how Pastor Banks required Mr. Walker to discontinue communication with his parents if he wanted to remain in the CSFC. The district court also praised Mr. Walker for divorcing himself from the beliefs of the CSFC and questioned whether Pastor Banks espoused values consistent with Christianity. Finally, the district court outlined actions taken by Pastor Banks subsequent to Mr. Walker questioning her divine prophecies, actions which the court had deemed harassing. Included in those actions were Pastor Banks (1) excommunicating Mr. Walker from the CSFC, (2) ordering Mr. Walker's wife and son not to have any further contact with Mr. Walker, and (3) writing Mr. Walker a letter in which she attributed his father's cancer and the proliferation of his own muscle disease to his decision to speak against her and the CSFC by filing his § 2255 motion.

### C.    *Motions to Restrict, to Receive Transcript, & to Unseal*

Following his resentencing hearing, Mr. Walker moved to restrict access to the transcript of his § 2255 hearing, supporting his motion to restrict with a document that, itself, is restricted. Through a text order accompanied by a restricted access written order, the district court granted Mr. Walker's motion to restrict. Thereafter, Ms. Lawson, on behalf of herself and purportedly as counsel for Mr. Walker's codefendants, moved to receive the transcript from the day on which she testified, June 15, 2017.[4] In advancing the motion, Ms. Lawson relied on 28 U.S.C. § 753 and her need to review the transcript in preparation for defending against the attorney disciplinary proceedings. The district court granted the motion with respect to Ms. Lawson's own testimony but denied the motion with respect to the other witnesses who testified on June 15, 2017. In support of the partial denial, the district court cited its text order granting Mr. Walker's motion to restrict, but it did not provide Ms. Lawson with any of its analysis.

Thereafter, Ms. Lawson, again on behalf of herself and Mr. Walker's codefendants, moved to receive the transcript of all three days of the § 2255 hearing. This motion argued CSFC members never harassed any of the witnesses and challenged the propriety of the district court's decision to grant Mr. Walker § 2255 relief. The district court entered a text order denying the motion to receive a

---

[4] Sometime after the resentencing hearing but before this motion to receive the transcript, the district court judge initiated attorney disciplinary proceedings against Ms. Lawson in the Colorado Supreme Court and the District of Colorado.

transcript of all three days of testimony "for the same reasons as stated in [its partial denial of Ms. Lawson's motion to receive the transcript of all witnesses on the day she testified]." 17-1415 App'x at 38. Ms. Lawson, again on behalf of herself and Mr. Walker's codefendants, filed an appeal. *See* Notice of Appeal, *United States v. Harper*, No. 1:09-cr-00266-CMA-2, (D. Colo. Nov. 10, 2017) ECF No. 1093. In pertinent part, the notice of appeal reads:

> Gwendolyn M. Lawson Attorney of Record for co-defendants, Demetrius K. Harper, Kendrick Barnes, Clinton A. Stewart, David A. Banks and David Zirpolo in the above named case, hereby appeal to the United States Court of Appeals for the Tenth Circuit from Orders 1090 and 1092 denying access to the transcripts for the June 12, 15 and 16, 2017 from Gary Walker Evidentiary Hearing . . . .

*Id.* And, Ms. Lawson filed the notice of appeal in Mr. Harper's case rather than Mr. Walker's case. *See id.*

Thereafter, the CSFC, through counsel other than Ms. Lawson, moved to unseal the transcript of the § 2255 hearing, arguing (1) it had a private interest in the transcript because statements in the transcript impugned its reputation in the community and (2) a general First Amendment and common law public right of access to judicial records independently countenanced against the sealing of the transcript. In an unrestricted order, the district court denied the CSFC's motion, concluding the CSFC primarily sought the transcript for personal purposes and faulting the CSFC for failing to advance a "less intrusive alternative[]" than sealing the entire record. 18-1273 App'x at 84. The CSFC timely appealed, with Ms. Lawson

8

representing the CSFC on appeal. We consolidated the appeals in cases 17-1415 and 18-1273.

## II.  DISCUSSION

Before reaching the merits of these appeals, we address three preliminary matters: (1) the identity of the appellants in case number 17-1415, (2) our jurisdiction over these appeals, and (3) the parties' motions to supplement the record on appeal.

### A.  *Identity of Appellants in Case No. 17–1415*

Case No. 17-1415 is an appeal from two district court orders: (1) Docket Number 1090, which denied Docket Number 1088—the motion to receive the transcript of the June 15, 2017, portion of the § 2255 hearing; and (2) Docket Number 1092, which denied Docket Number 1091—a motion to receive the full transcript of the § 2255 hearing. The motions identify "Gwendolyn M. Lawson, Attorney at Law and Defendants, Demetrius K. Harper, David A. Banks, Clinton A. Stewart, David A. Zirpolo, and Kendrick Barnes, by and through their attorney" as the movants. 17-1415 App'x at 26, 31. Further, the notice of appeal identifies Ms. Lawson, Mr. Harper, Mr. Barnes, Mr. Stewart, Mr. Banks, and Mr. Zirpolo as parties to the appeal. And, as noted above, the notice of appeal was filed in Mr. Harper's case.

From this, we conclude that, in addition to Ms. Lawson, Mr. Harper, Mr. Barnes, Mr. Stewart, and Mr. Zirpolo were movants below and are appellants in

Case Number 17-1415.[5] However, we reach a different conclusion with respect to

Mr. Banks. In 2011, prior to the sentencing proceeding, Ms. Lawson moved to

withdraw from representing Mr. Banks, and a magistrate judge granted the motion.

Thereafter, for purposes of sentencing and appeal, Mr. Torres represented Mr. Banks.

And nothing in the record, such as a new entry of appearance by Ms. Lawson on

behalf of Mr. Banks, suggests Mr. Banks subsequently sought Ms. Lawson's legal

services. We, therefore, conclude Ms. Lawson lacked a basis to file the motions and

notice of appeal on behalf of Mr. Banks and we do not include him as an appellant in

Case Number 17-1415.

## B.     *Jurisdiction over Appeal*

We ordered the parties in both appeals to file jurisdictional memoranda

addressing whether Appellants need certificates of appealability (COAs) for this

court to possess jurisdiction over the appeals. The Government and the Appellants in

both appeals argue COAs are not needed because Appellants are not § 2255 movants

and are not appealing from the district court's order granting in part and denying in

part Mr. Walker's § 2255 motion. Mr. Walker agrees the CSFC does not need a COA

---

[5] We acknowledge the docketing statement filed by Ms. Lawson in this court identifies only herself as an appellant. However, under Federal Rule of Appellate Procedure 3(b)(1), "[w]hen two or more parties are entitled to appeal from a district-court judgment or order, and their interests make joinder practicable, *they may file a joint notice of appeal. They may then proceed on appeal as a single appellant*." (emphasis added). Thus, where the motions identified Ms. Lawson, Mr. Harper, Mr. Barnes, Mr. Stewart, and Mr. Zirpolo as movants and the notice of appeal identified the same as appellants, Ms. Lawson was not required to identify Mr. Harper, Mr. Barnes, Mr. Stewart, and Mr. Zirpolo on the post-notice-of-appeal docketing statement.

but argues the 17-1415 Appellants need a COA to the extent they seek to challenge the district court's ruling on Mr. Walker's § 2255 motion.

Whether a party needs a COA is a threshold jurisdictional question. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("[U]ntil a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners."). Thus, although the parties are largely in agreement that Appellants do not need COAs, we must assure ourselves that COAs are not required before considering the merits of the appeals. *See Chavez v. City of Albuquerque*, 402 F.3d 1039, 1043 (10th Cir. 2005) ("[W]e have a continuing obligation to assure ourselves that appellate jurisdiction exists."); *see also Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 17–18 (1951) (noting that parties cannot consent to the expansion of federal court jurisdiction).

Section 2253 of Title 28 establishes when a COA is required: "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . *the final order* in a proceeding under section 2255." 28 U.S.C. § 2253(c)(1) (emphasis added). Meanwhile, Federal Rule of Appellate Procedure 22 also addresses the issuance of a COA, stating:

> In a habeas corpus proceeding in which the detention complained of arises from process issued by . . . a 28 U.S.C. § 2255 proceeding, *the applicant* cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c). If *an applicant* files a notice of appeal, the district clerk must send to the court of appeals the certificate (if any) . . . along with the notice of appeal and the file of the district-court proceedings. If the district judge has denied the certificate, *the applicant* may request a circuit judge to issue it.

11

Fed. R. App. P. 22(b)(1) (emphases added). Based on the emphasized language in 28

U.S.C. § 2253(c)(1) and Federal Rule of Appellate Procedure 22(b)(1), we conclude

Appellants are not required to obtain a COA relative to their challenge to the district

court's decision to restrict access to the § 2255 hearing transcript.[6]

First, by its terms, § 2253(c)(1) applies when an appeal is taken from "*the* final

order" in a § 2255 proceeding; but Appellants appeal from orders other than the final

order granting Mr. Walker relief. Second, Rule 22(b)(1) focuses on the "applicant"

needing to obtain a COA but does not place the same requirement on other

individuals, such as Appellants, who might appeal from a collateral order in the

course of a § 2255 case. *See United States v. Pearce*, 146 F.3d 771, 773 (10th Cir.

1998) ("[M]ost courts have held that Congress intended to require a certificate only

in an appeal by an *applicant* for a writ.").

---

[6] To the extent the 17-1415 Appellants seek to challenge the district court's decision to grant Mr. Walker § 2255 relief, we need not opine on whether a COA is required because a more apparent jurisdictional defect—a lack of standing—precludes reaching the merits of their potential argument. Parties have standing to challenge an action, if they "suffered 'some threatened or actual injury resulting from the putatively illegal action.'" *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 (1973)). Where a party relies on a "threatened injury" the "injury must be 'certainly impending'" to confer standing, and a speculative or attenuated injury will not suffice. *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)). Here, the 17-1415 Appellants do not identify any already-sustained injury resulting from the district court's grant of habeas relief and their suggested prospective injuries are speculative and attenuated. Thus, the 17-1415 Appellants lack standing to challenge the district court's decision to grant Mr. Walker § 2255 relief.

Our conclusion is consistent with the primary purposes of the COA requirement: "to protect government officials from the need to respond to large numbers of insignificant appeals." David G. Knibb, Federal Court Appeals Manual § 16.2 (6th ed. 2018); *see* 16AA Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3968.1 at 1–2 (4th ed. 2008) ("Courts have noted that the COA requirement serves to protect the government from having to defend against frivolous appeals."). But very few appeals from § 2255 proceedings involve collateral matters, such as the denial of a motion to access a transcript of a proceeding. Thus, the government would not be flooded with appeals if a COA is not required before this court can take jurisdiction over appeals from matters collateral to the § 2255 proceeding. Our conclusion is also consistent with the conclusion we reached in an unpublished order where we held § 2255 applicants appealing from the denial of a motion to unseal did not need a COA. *See United States v. Pickard*, 733 F.3d 1297, 1301 n2. (10th Cir. 2013) ("This court previously determined that Defendants do not need to obtain a certificate of appealability . . . in order to appeal the district court's decision denying their motion to unseal because that motion is separate from any challenge to their convictions and sentences under 28 U.S.C. § 2255." (citing *United States v. Pickard*, Nos. 12–3142, 12–3143, Order (10th Cir. Oct. 2, 2012))). And if § 2255 applicants do not need COAs to appeal the denial of a motion to unseal, it follows non-applicants do not need COAs.

13

## C. *Motions to Supplement*

The 17-1415 Appellants, the CSFC, and Mr. Walker all separately move to supplement the record on appeal. We outline the legal standard for when supplementation is permissible before analyzing the three motions to supplement.

### 1. Legal Standard

A party may supplement the record pursuant to either Federal Rule of Appellate Procedure 10(e) or the inherent equitable power exception to the constraints placed on supplementation by Rule 10(e).

Although "Rule 10(e) allows a party to supplement the record on appeal," it "does not grant a license to build a new record." *United States v. Kennedy*, 225 F.3d 1187, 1191 (10th Cir. 2000) (internal quotation marks omitted). Under Rule 10(e), a party may modify the record on appeal "only to the extent it is necessary to 'truly disclose what occurred in the district court.'" *Id.* (quoting Fed. R. App. P. 10(e)(1)). To that point, as a general rule, "[t]his court will not consider material outside the record before the district court." *Id.*; *cf. Magnum Foods, Inc. v. Cont'l Cas. Co.*, 36 F.3d 1491, 1502 n.12 (10th Cir. 1994) ("Although this court may appropriately take judicial notice of developments that are a matter of public record and are relevant to the appeal, our review of a grant of summary judgment is limited to the record before the trial court at the time it made its ruling." (citation omitted)).

Apart from Rule 10(e), "under some circumstances, we have an inherent equitable power to supplement the record on appeal." *Kennedy*, 225 F.3d at 1192

14

(citing *Ross v. Kemp*, 785 F.2d 1467 (11th Cir. 1986)).[7] In determining whether proposed supplemental material qualifies for the inherent equitable power exception to Rule 10(e), a court should evaluate factors such as: "1) whether 'acceptance of the proffered material into the record would establish beyond any doubt the proper resolution of the pending issue;' [and] 2) whether remand for the district court to consider the additional material would be contrary to the interests of justice and a waste of judicial resources."[8] *Id.* at 1191 (quoting *Ross*, 785 F.2d at 1475).

## 2. The 17-1415 Appellants' Motion

The 17-1415 Appellants seek to supplement the record with two e-mails Ms. Lawson received from her ex-husband, Stanley Solomon, a former CSFC member who testified at the § 2255 hearing. These e-mails were not part of the record before the district court. Accordingly, the e-mails cannot be added to the record through Rule 10(e). Furthermore, the e-mails shed little to no light on any

---

[7] Although *United States v. Kennedy*, 225 F.3d 1187 (10th Cir. 2000), involved an appeal from the denial of § 2255 relief where the rules governing the development of the record are more exacting, *see* Rules 7 & 8 of the Rules Governing §§ 2254 & 2255 Proceedings, this court has cited *Kennedy* and the inherent equitable power exception in appeals from non-§ 2255 proceedings, *see Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1110 n.11 (10th Cir. 2010); *see also Breen v. Black*, 709 F. App'x 512, 514 (10th Cir. 2017); *Chytka v. Wright Tree Serv., Inc.*, 617 F. App'x 841, 846 (10th Cir. 2015); *Pennington v. Northrop Grumman Space & Mission Sys. Corp.*, 269 F. App'x 812, 817 (10th Cir. 2008).

[8] *Kennedy* identified a third factor specific to an appeal from the denial of § 2255 relief, a factor which is not applicable in this case. *See* 225 F.3d at 1191 (identifying third factor as "whether supplementation is warranted in light of the 'unique powers that federal appellate judges have in the context of habeas corpus actions'" (quoting *Ross v. Kemp*, 785 F.2d 1467, 1475 (11th Cir. 1986))).

matter dispositive to these appeals such that the factors underlying the inherent equitable power exception to Rule 10(e) counsel against supplementation. Therefore, we deny the 17-1415 Appellants' motion to supplement.

### 3. The CSFC's Motion

The CSFC moves to supplement the record with (1) an undated letter from a CSFC member to Mr. Walker's probation officer detailing Mr. Walker's August 28, 2018, attempted delivery of a birthday card to Kyle Walker—Mr. Walker's son and a member of the CSFC; and (2) an August 28, 2018, letter from Kyle Walker. As both of these letters were drafted subsequent to the district court's last order on June 1, 2018, the letters were not part of the district court record and are not proper materials for supplementation under Rule 10(e). Furthermore, the letters do not prove relevant to the public right of access argument upon which we resolve the CSFC's appeal. Therefore, the factors underlying the inherent equitable power exception to Rule 10(e) counsel against supplementation, and we deny the CSFC's motion to supplement.

### 4. Mr. Walker's Motion

Mr. Walker moves to supplement the record with (1) a June 14, 2018, e-mail from a CSFC member to Mr. Walker's counsel; (2) a radio advertisement about the district court judge; and (3) a letter from the Colorado Supreme Court Office of Attorney Regulation Counsel indicating that the disciplinary action instituted by the district court judge against Ms. Lawson was resolved in Ms. Lawson's favor. The first two items post-date the district court's June 1, 2018, order such that

16

supplementation is not appropriate under Rule 10(e). Furthermore, the first two items are neither dispositive nor relevant to the issues that dominate this matter. Accordingly, the inherent equitable power exception to Rule 10(e) does not favor supplementation of the first two items, and we deny Mr. Walker's motion as to those two items.

Regarding the letter from the Colorado Supreme Court Office of Attorney Regulation Counsel, matters in state bar disciplinary proceedings are subject to judicial notice. *Rose v. Utah State Bar*, 471 F. App'x 818, 820 (10th Cir. 2012); *see White v. Martel*, 601 F.3d 882, 885 (9th Cir. 2010) (identifying "state bar record reflecting disciplinary proceedings" as documents "appropriate for judicial notice"). And where we may take judicial notice of a matter that occurs subsequent to the district court's ruling, supplementation is permissible. *See Magnum Foods, Inc.*, 36 F.3d at 1502 n.12. Furthermore, the letter is relevant to Ms. Lawson's argument that she has a personal interest in the full transcript because she needs it to properly defend against the state disciplinary proceeding. Accordingly, we grant Mr. Walker's motion with respect to the letter from the Colorado Supreme Court Office of Attorney Regulation Counsel. However, because Ms. Lawson acknowledges in her reply brief that the state disciplinary proceeding was resolved in her favor, we see no need to delay issuance of our ruling to allow Mr. Walker to formally supplement the record. Rather, we accept as true that the state disciplinary proceeding concluded, but we permit Mr. Walker ten days from the issuance of this opinion to supplement the record.

### D. *Analysis of Merits of Appeals*

We state the standard of review and the requirements governing preservation of arguments before outlining the law surrounding the public's right of access to judicial records. Thereafter, we address the public right of access argument in each appeal, concluding the district court abused its discretion when it denied the CSFC's motion to unseal but that the 17-1415 Appellants failed to preserve a public right of access argument. Finally, we consider and reject the 17-1415 Appellants' four additional arguments for vacating or reversing the district court's orders denying their motions to receive the transcript.

### 1. Standard of Review

The district court's decision to seal or unseal documents is reviewed for an abuse of discretion, but any legal principles the district court applied when making its decision are reviewed de novo. *Pickard*, 733 F.3d at 1302. We apply the overarching abuse of discretion standard because the decision whether to seal or unseal is "necessarily fact-bound." *United States v. Hickey*, 767 F.2d 705, 708 (10th Cir. 1985). A district court abuses its discretion where it "(1) commits legal error, (2) relies on clearly erroneous factual findings, or (3) where no rational basis exists in the evidence to support its ruling." *Dullmaier v. Xanterra Parks & Resorts*, 883 F.3d 1278, 1295 (10th Cir. 2018); *see Pickard*, 733 F.3d at 1302 (district court abuses its discretion if it "appl[ies] incorrect legal principles").

18

## 2. Preservation Requirement

"An appellant can fail to preserve an appeal point through either forfeiture or waiver." *Sprint Nextel Corp. v. Middle Man, Inc.*, 822 F.3d 524, 531 (10th Cir. 2016). "A federal appellate court will not consider an issue not passed upon below." *FDIC v. Noel*, 177 F.3d 911, 915 (10th Cir. 1999) (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)). "Consequently, when a litigant fails to raise an issue below in a timely fashion and the court below does not address the merits of the issue, the litigant has not preserved the issue for appellate review." *Id.* Finally, where a party forfeits an argument by not raising it in district court, we will only overlook the forfeiture if the party advancing the argument on appeal presents the argument through the lens of plain error review. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128, 1131 (10th Cir. 2011) ("[T]he failure to argue for plain error and its application on appeal . . . surely marks the end of the road for an argument for reversal not first presented to the district court.").

## 3. Public Right of Access Argument

On appeal, the Appellants argue the district court, when granting Mr. Walker's motion to restrict the § 2255 hearing transcript and denying the various motions to gain access to said transcripts, failed to accord proper weight to the public right of access to inspect judicial records. We outline the prevailing legal standard before analyzing the issue as to each appellate case.

19

a. *Legal standard*

"It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (footnote omitted). Generally, this right is not conditioned "on a proprietary interest in the document or upon a need for it as evidence in a lawsuit." *Id.* Rather, "[t]he interest necessary to support the issuance of a writ compelling access has been found, for example, in the citizen's desire to keep a watchful eye on the workings of public agencies." *Id.* at 597–98. Likewise, the common law right to access court records "is an important aspect of the overriding concern with preserving the integrity of the law enforcement and judicial processes." *Hickey*, 767 F.2d at 708.

Based on these principles, "there is a *strong presumption* in favor of public access" as "the interests of the public . . . are presumptively paramount[] [when weighed] against those advanced by the parties." *Pickard*, 733 F.3d at 1302 (emphasis added) (internal quotation marks omitted). And at least three factors may amplify this strong presumption in favor of public access. First, the purposes behind allowing public access to judicial records are heightened when "the district court used the sealed documents to determine litigants' substantive legal rights." *Id.* (internal quotation marks omitted). Second, where a criminal proceeding does not involve presentation to a jury, the importance of public access to the proceeding is "even more significant." *See Press-Enter. Co. v. Superior Court of Cal.*, 478 U.S. 1, 12–13 (1986) (applying right to access to preliminary hearings); *cf. In re Hearst*

20

*Newspapers, L.L.C.*, 641 F.3d 168, 179 (5th Cir. 2011) ("[T]he fact that there is no jury at the sentencing proceeding, in contrast to jury trials, heightens the need for public access."). Third, where the information sealed has already been disclosed in a public proceeding, a party's personal interest in sealing the material is diminished.[9] *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007); *see Pickard*, 733 F.3d at 1305 ("The fact that some of the sealed information has already been made public suggests that much of the information . . . could be unsealed.").

The right of public access to judicial records, however, is "not absolute" as "[e]very court has supervisory power over its own records and files," which gives it the authority to seal documents. *Nixon*, 435 U.S. at 598; *see Pickard*, 733 F.3d at 1300. The "strong presumption of openness can be overcome where countervailing interests *heavily outweigh* the public interests in access." *Pickard*, 733 F.3d at 1302 (emphasis added) (internal quotation marks omitted). Put another way, "[t]he party seeking to seal any part of a judicial record bears the heavy burden of showing that 'the material is the kind of information that courts will protect' and that 'disclosure will work a clearly defined and serious injury to the party seeking closure.'" *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (quoting *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984)).

---

[9] While we state these three factors as having enhanced the strong presumption in favor of the public interest here, we do not conclude the CSFC necessarily perfected its arguments on each of these factors. Nonetheless, these factors are matters the district court may need to address on remand.

Situations where the right to public access is sufficiently subservient to a party's interest include where the records are likely to be used for "improper purposes," including "'to gratify private spite or promote public scandal'" or to "serve as reservoirs of libelous statements for press consumption." *Nixon*, 435 U.S. at 598 (quoting *In re Caswell*, 29 A. 259, 259 (R.I. 1893)). However, any denial of public access to the record must be "*narrowly tailored* to serve th[e] interest" being protected by sealing or restricting access to the records. *Press-Enter. Co.*, 478 U.S. at 13–14 (emphasis added); *see Pickard*, 733 F.3d at 1304 (noting that district court, when sealing record, should consider whether supplying a redacted version of the record would adequately protect the interests of the party seeking the seal); *cf. Waller v. Georgia*, 467 U.S. 39, 48 (1984) ("[T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, *the closure must be no broader than necessary to protect that interest*, [and] the trial court must consider reasonable alternatives to closing the proceeding." (emphasis added)). And a district court abuses its discretion if it does "not narrowly tailor its order" closing the record to public inspection. *See Davis v. Reynolds*, 890 F.2d 1105, 1110 (10th Cir. 1989).

After "a court orders documents before it sealed, the court continues to have authority to enforce its order sealing those documents, as well as authority to loosen or eliminate any restrictions on the sealed documents. This is true even if the case in which the documents were sealed has ended." *Pickard*, 733 F.3d at 1300 (citations omitted). If after a court seals its records a motion is made "to remove such a seal, the district court should closely examine whether circumstances have changed

22

sufficiently to allow the presumption allowing access to court records to prevail."
*Miller*, 16 F.3d at 551–52. And, when reviewing a motion to unseal, the district court must remember that "the party seeking to keep records sealed bears the burden of justifying that secrecy," as the granting of the earlier motion to seal does not shift the burden onto the party seeking to unseal. *Pickard*, 733 F.3d at 1302; *see id.* at 1303–04 (holding district court abused its discretion where it did not continue to "apply the presumption of public access to judicial records" when confronted with motion to unseal). Finally, in granting a motion to seal, or denying a motion to unseal, "[t]he trial court must articulate [the interest warranting sealing] 'along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.'" *Phoenix Newspapers, Inc. v. U.S. Dist. Court for the Dist. of Ariz.*, 156 F.3d 940, 949 (9th Cir. 1998) (quoting *Press-Enter. Co.*, 478 U.S. at 9–10).

   b. *Analysis as to the CSFC*

The CSFC presented a public right of access argument to the district court when moving to unseal the transcript.[10] Accordingly, the CSFC's argument is properly before us. And, after a review of the full record, including the transcript of the § 2255 hearing, we conclude the district court abused its discretion by (1) not

---

[10] The CSFC moved to unseal the entire record in Mr. Walker's § 2255 proceeding. The district court, however, only addressed the motion relative to the hearing transcript. And, on appeal, the CSFC does not specifically argue that the district court's failure to address its motion relative to sealed documents other than the transcript was error. Thus, we confine our analysis to what the district court did decide—that the transcript of the hearing would not be unsealed.

fully acknowledging the strong presumption in favor of the public right of access, including several factors that heightened the strong presumption in this instance; (2) failing to narrowly tailor its orders restricting access to the record and, relatedly, failing to connect the interests asserted by Mr. Walker to the sealing of the testimony of *each witness* at the § 2255 hearing; and (3) faulting the CSFC for not proposing an alternative to sealing the entire record. We address each abuse of discretion in turn.

When granting Mr. Walker's motion to restrict and denying the CSFC's motion to unseal, the district court failed to acknowledge and account for three facts that heightened the already strong presumption in favor of the public right of access. First, the district court relied on the § 2255 hearing testimony to grant Mr. Walker relief. *See Pickard*, 733 F.3d at 1302. Second, the proceeding, although technically civil, impacted Mr. Walker's criminal sentence and occurred in the absence of a jury. *See Press-Enter. Co.*, 478 U.S. at 12–13. Third, not only was the § 2255 hearing not sealed such that the information restricted was already exposed to the public but during Mr. Walker's resentencing hearing, the district court, in open court, discussed aspects of the restricted record.[11] *See Mann*, 477 F.3d at 1149; *see also Pickard*, 733 F.3d at 1305. In not acknowledging and addressing these facts in its orders restricting the transcript and denying the CSFC's motion to unseal, the district court either failed to apply the appropriate legal standard or failed to adequately articulate its

---

[11] At least one member of the CSFC, Ms. Lawson, was present at the resentencing hearing, and the transcript of the resentencing hearing is not restricted.

analysis in support of restricting the record so as to permit meaningful appellate review.

Next, by restricting access to the entire transcript, the district court failed to narrowly tailor its order to the interest asserted by Mr. Walker—that he and the former CSFC members that testified were likely to face harassment if the CSFC gained access to the transcript. It is not apparent why restricting access to the testimony of Mr. Lowther, who served as counsel for Mr. Walker and four of his codefendants, and of Mr. Gaines, who served process on Ms. Lawson, furthers the personal interest advanced by Mr. Walker.[12] Certainly, the district court did nothing to tie the private interests raised by Mr. Walker to the need to restrict access to the testimony of these two witnesses. And, the district court also failed to consider whether redacting aspects of the testimony of other witnesses, especially the expert witnesses, would allow for the unsealing of their testimony.[13]

Interestingly, the district court, in its order denying the CSFC's motion to unseal, implicitly acknowledged it had not narrowly tailored its order granting

---

[12] We observe that, despite not having access to the transcript, the CSFC was well aware of Mr. Lowther's and Mr. Gaines's identities and roles in the proceedings. Yet the district court did not cite any evidence suggesting CSFC members took steps to harass Mr. Lowther or Mr. Gaines. Nor is it apparent from the record how or why the CSFC would use a transcript of Mr. Lowther's or Mr. Gaines's testimony for a spiteful or scurrilous purpose.

[13] In particular, we are skeptical of the need to restrict entirely access to the testimony of the expert for the standard of a reasonably competent criminal defense attorney, as redacting the expert's name and place of employment is likely sufficient to mitigate the concerns raised by Mr. Walker.

25

Mr. Walker's motion to restrict when it stated: "Because of this Court's need to protect *virtually all of the witnesses* at the hearing, including Mr. Walker and his reasons for requesting habeas relief, which were discussed throughout the three-day hearing, sealing the transcript[] in [its] entirety is warranted." 18-1273 App'x at 84 (emphasis added). But if the restriction was necessary to protect only "virtually all of the witnesses," it follows that the restriction was not necessary for the protection of at least one witness. Yet, the district court did not follow our precedent and narrowly tailor its orders restricting access to the transcript. As such, the district court abused its discretion.

Finally, the district court erred when it faulted the CSFC for not proposing alternatives to restricting access to the entire transcript. *See id.* ("CSFC presents this Court with no less intrusive alternatives, instead requesting complete and unfettered access to 'all documents associated with and introduced at the hearing, along with the immediate unsealing of the transcript associated with the proceeding.'" (quoting *id.* at 67 (CSFC Mot. to Unseal at 3))). But the duty was on the district court, not the CSFC, to consider alternatives to restricting access to the entire transcript. *See Davis*, 890 F.2d at 1110; *Waller*, 467 U.S. at 48. And placing such a duty on the district court, rather than the party seeking access, is logical because the district court had full access to the transcript while the CSFC had no access to the restricted transcript. Thus, the CSFC could not comb through the transcript and meaningfully advance a narrower alternative than unsealing the entire transcript.

Where access to Mr. Walker's filings was restricted *ab initio*, the issue of restricting access to the record proceeded in a quasi-*ex parte* manner, with the individuals and entity against whom Mr. Walker alleged wrongdoing not before the court. But a court must take extra care when granting an *ex parte* motion. Here, the district court issued a series of text orders that neither stated the requirements for restricting access to judicial records nor critically analyzed whether sealing the *full* transcript was appropriate. And while the record supports the conclusion that the CSFC is far from the most upstanding litigant, the court was still required to carefully consider the public's interest in judicial records and craft a narrowly tailored order.

In summation, we conclude the district court abused its discretion when it denied the CSFC's motion to unseal. Accordingly, we vacate the district court's order and remand for further proceedings. On remand, the district court should consider the factors that heighten the public right of access to the transcript of Mr. Walker's § 2255 hearing, address how the interests advanced by Mr. Walker connect to the restriction placed on public access to the testimony of each witness, and consider whether there exists a narrower alternative to restricting access to the full transcript. Finally, because a non-insignificant amount of time has elapsed since the district court restricted access to the judicial records, the district court may need to consider whether circumstances have changed so as to diminish Mr. Walker's interests. *See Miller*, 16 F.3d at 551–52 ("Even if the initial sealing was justified, when there is a subsequent motion to remove such a seal, the district court should closely examine

27

whether circumstances have changed sufficiently to allow the presumption allowing access to court records to prevail.").

   c. *Analysis as to the 17-1415 Appellants*

Unlike the CSFC's motion in the district court, neither of the two motions to the district court filed by the 17-1415 Appellants raised a public right of access argument. As such, the argument is forfeited. And although the 17-1415 Appellants raise the argument on appeal, neither their opening brief nor their reply brief presents the argument through the lens of plain error review. This is true even though Mr. Walker, in his response brief, pointed out the forfeiture of the argument. Accordingly, we do not reach the merits of the 17-1415 Appellants' argument to unseal based on a public right of access. *See Richison*, 634 F.3d at 1131 ("[T]he failure to argue for plain error and its application on appeal . . . surely marks the end of the road for an argument for reversal not first presented to the district court.").

## 4. Additional Arguments by the 17-1415 Appellants

The 17-1415 Appellants raise four additional arguments for vacating or reversing the district court's orders denying their motions to receive the transcript. These additional arguments range from unpreserved, to meritless, to illogical, to incomprehensible.

   a. *Right to Notice Before Restriction*

The 17-1415 Appellants argue the district court had a duty to provide them notice and an opportunity to be heard before granting Mr. Walker's motions to restrict access to the records in his § 2255 proceeding. The 17-1415 Appellants,

28

however, failed to present this argument to the district court; thus, the argument is forfeited. And where the 17-1415 Appellants do not raise this argument on appeal through the lens of plain error review, we do not reach the merits of the argument. *See id* ("[T]he failure to argue for plain error and its application on appeal . . . surely marks the end of the road for an argument for reversal not first presented to the district court.").

    b. *Right of access under 28 U.S.C. § 753*

Ms. Lawson argues 28 U.S.C. § 753 grants her a right to receive the transcript. This argument, although presented to the district court, is without merit. The relevant portion of 28 U.S.C. § 753 states:

> The reporter or other individual designated to produce the record shall transcribe and certify such parts of the record of proceedings as may be required by any rule or order of court, including all . . . proceedings in connection with the imposition of sentence in criminal cases. . . . He shall also transcribe and certify such other parts of the record of proceedings as may be required by rule or order of court. *Upon the request of any party to any proceeding which has been so recorded* who has agreed to pay the fee therefor, or of a judge of the court, *the reporter or other individual designated to produce the record shall promptly transcribe the original records of the requested parts of the proceedings* and attach to the transcript his official certificate, and *deliver the same to the party or judge making the request.*

28 U.S.C. § 753(b) (emphasis added). By its terms, § 753(b) conveys a right of access only to parties to the proceeding and judges of the court. It does not convey any right of access to witnesses such as Ms. Lawson. Furthermore, while Mr. Harper, Mr. Stewart, Mr. Zirpolo, and Mr. Barnes were parties to the criminal trial, they were

not parties to Mr. Walker's § 2255 proceeding. Accordingly, we reject this argument as without merit.

c. *Personal interest in transcript*

Next, Ms. Lawson argues she has a personal interest in obtaining the full transcript because the transcript contains (1) false statements against her and she cannot defend her name and reputation as an attorney without access to the transcript; and (2) statements relevant to the disciplinary proceedings instituted against her in the Colorado Supreme Court and the District of Colorado. Both of these personal interest arguments were presented to the district court. Ms. Lawson's first argument, however, is illogical. To the extent the transcript contains statements against Ms. Lawson's name and reputation, maintaining the restriction of access and keeping the transcript out of the public eye will protect Ms. Lawson's name and reputation. Ms. Lawson's second argument is partially moot and partially unsupported by the record before us. As Ms. Lawson acknowledges in her reply brief, the disciplinary proceeding in the Colorado Supreme Court was resolved in her favor. *See* 17-1415 Reply Br. at 5 ("The Attorney Regulation has determined that Attorney Lawson has not violated any Rules of Professional conduct and did not provide Mr. Walker ineffective assistance of counsel."). Thus, any need Ms. Lawson had for the full transcript relative to that proceeding evaporated with the termination of the proceeding. As for the disciplinary proceeding in the District of Colorado, Ms. Lawson fails to enlighten us as to the nature of the charge(s) against her. Thus, Ms. Lawson has not demonstrated the district court abused its discretion when it

determined that providing her with a transcript of her own testimony was sufficient to permit her to defend against the allegations levied by the district court judge.

    d. *Violation of Federal Rule of Appellate Procedure 4*

Finally, Ms. Lawson argues the district court, by denying her access to the full transcript, violated her constitutional right to appeal, as provided by Federal Rule of Appellate Procedure 4. The contours of Ms. Lawson's argument on this point are beyond our powers of comprehension given that (1) the district court docketed Ms. Lawson's notice of appeal; (2) Ms. Lawson presented her appellate arguments to this court; and (3) Federal Rule of Appellate Procedure 4 does not, in and of itself, create any constitutional rights. To the extent Ms. Lawson is trying to argue that we cannot effectively consider her arguments on appeal without access to the transcript, we reviewed the full transcript and would have ruled in Ms. Lawson's favor on the public right of access argument had she had the foresight to include such an argument in the motions to the district court or argue for plain error review in this court. She did not.

### III.   CONCLUSION

We **DENY** the 17-1415 Appellants' motion to supplement and the CSFC's motion to supplement, and **DENY IN PART** and **GRANT IN PART** Mr. Walker's motion to supplement. Mr. Walker shall have ten days from the issuance of this opinion to submit the letter from the Colorado Supreme Court Office of Attorney Regulation Counsel. Further, we **AFFIRM** the district court's orders denying the 17-1415 Appellants' motions to receive the transcript. However, we **VACATE** the

district court's order denying the CSFC's motion to unseal and **REMAND** for further proceedings consistent with this Order and Judgment.

Entered for the Court


Carolyn B. McHugh
Circuit Judge